## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND** | ) | |
| **ETHICS IN WASHINGTON** | ) | |
| 1400 Eye Street, N.W., | ) | |
| Suite 450 | ) | |
| Washington, D.C.  20005, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE** | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C.  20530, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive, declaratory,

and other appropriate relief.  Plaintiff seeks the release of records from three U.S. Department of

Justice ("DOJ") components – the Criminal Division, the Federal Bureau of Investigation

("FBI"), and the Executive Office of U.S. Attorneys ("EOUSA") – concerning the now closed

investigation of former Senator John Ensign (R-NV).  Plaintiff is statutorily entitled to the

disclosure of the records it seeks.  Notwithstanding that entitlement, defendant has improperly

withheld the requested records.

### Jurisdiction and Venue

2.  This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §§ 2201(a) and 2202.  Venue lies in

this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

3.  Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. CREW seeks to empower citizens to have an influential voice in government decisions and in the governmental decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA.

4.  Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702. DOJ is the federal agency with possession and control of the requested records and is responsible for fulfilling plaintiff's FOIA requests. The Criminal Division, the FBI, and EOUSA are components of defendant DOJ.

### DOJ's Investigation Of Sen. John Ensign

5.  On June 16, 2009, then-Senator John Ensign (R-NV) admitted he had been having an affair with a former campaign staff member who was later identified as Cynthia Hampton, the wife of Sen. Ensign's close friend and former chief of staff, Doug Hampton. The affair had begun in late 2007, and continued until July 2008.

6.  Both Cynthia and Doug Hampton were promised severance payments from Sen. Ensign upon leaving his employ. After discussions with Sen. Ensign about these payments,

2

Doug and Cynthia Hampton and two of their children received a check dated April 27, 2008, for $96,000 from the Ensign Family Trust account. The Ensign Family Trust holds the significant personal assets of Michael and Sharon Ensign, the parents of Sen. Ensign. Sen. Ensign has no authority to order disbursements from this trust.

7.  After the story of Sen. Ensign's long-term affair became public, Sen. Ensign acknowledged publicly in July 2009, the Hamptons had received a payment of $96,000, which he described as a gift from his parents to the Hampton family. The amount of this so-called "gift" greatly exceeded other gifts Michael and Sharon Ensign had given to others.

8.  Mr. Hampton received an additional payment of $6,000, which Sen. Ensign's office described as the final payment for 12 days of unused vacation. The National Republican Senatorial Committee, which Sen. Ensign then chaired, also paid the Hamptons' son a total of $6,000 for his work as an intern.

9.  After Sen. Ensign advised Mr. Hampton he could no longer work for his office, Sen. Ensign met with constituents in an effort to persuade them to hire Mr. Hampton as a consultant. Sen. Ensign's efforts to line up work for Mr. Hampton paid off, securing Mr. Hampton a position as an outside governmental affairs consultant with Allegiant Airlines.

10.  Following his departure from Sen. Ensign's congressional staff, Mr. Hampton began lobbying Sen. Ensign's office on a variety of issues on behalf of Allegiant Airlines. One result of this lobbying was a telephone call Sen. Ensign made to the Secretary of Transportation, which resulted in the Department of Transportation making an offer to settle a pending enforcement proceeding against Allegiant.

11.  Beyond his lobbying on behalf of Allegiant Airlines, Mr. Hampton also contacted

Sen. Ensign's office on behalf of Entravision, a Spanish-language media company, in June 2008, and NV Energy in November 2008. In all, Mr. Hampton contacted Sen. Ensign's office at least 30 times regarding at least 12 different client matters.

12. After the story of Sen. Ensign's infidelity broke, in late 2009 or early 2010, DOJ initiated a criminal investigation of Sen. Ensign based on actions he took to control the fallout from his affair. DOJ's probe focused on Sen. Ensign's interactions with Doug Hampton after he left the congressional payroll and Sen. Ensign's activities as chair of the National Republican Senatorial Committee.

13. In December 2010, Sen. Ensign announced publicly he no longer was the target of a criminal investigation by DOJ, and that DOJ had no plans to charge him with any crimes related to the actions he took with respect to his extramarital affair, including his efforts to cover up that affair. Sen. Ensign's counsel stated he had received the information that DOJ no longer was targeting Sen. Ensign in a telephone call with a DOJ official. Sen. Ensign's office issued a written statement that provided in part: "Senator Ensign is certainly pleased that the Department of Justice no longer views him as a target in their investigation . . . Our office and the Senator have been cooperative with this investigation . . ."

14 At the same time, the Senate Select Committee on Ethics ("Ethics Committee") also was investigating Sen. Ensign's conduct related to the cover-up of his affair with Mrs. Hampton. In April 2011, while that investigation was pending, Sen. Ensign announced his resignation, effective May 3, 2011.

15. On May 10, 2011, Carol Elder Bruce, appointed by the Ethics Committee as special counsel to conduct a preliminary inquiry, issued a report laying out in great detail the evidence

4

she had gathered, the sources of the evidence, and her conclusions that Sen. Ensign acted illegally in his efforts to cover up his affair with Mrs. Hampton. *See Report Of The Preliminary Inquiry Into The Matter Of Senator John E. Ensign*, Submitted To The United States Senate Select Committee On Ethics By Carol Elder Bruce, Special Counsel, May 10, 2010. The potential criminal actions uncovered by the preliminary inquiry included, *inter alia*, aiding and abetting the violation of a one-year post-employment lobbying ban, discriminating on the basis of gender, false statements to the Federal Election Commission ("FEC"), and obstructing justice.

16. Further, the special counsel recommended that the Ethics Committee refer the matters outlined in her report to DOJ and the FEC for further investigation. The special counsel specifically recommended that DOJ and the FEC consider whether Sen. Ensign should be criminally prosecuted for aiding and abetting a violation of the post employment contact ban, 18 U.S.C. § 207; for conspiring to violate that statute; for making false statements; for obstructing justice; and for violating federal campaign finance laws.

17. In response to the report, the Ethics Committee voted unanimously to refer the findings of the special counsel to DOJ and the FEC. In explaining the vote Ethics Committee Chair Sen. Barbara Boxer stated, "we have reason to believe that Sen. Ensign violated laws within their jurisdiction" based on evidence she characterized as "egregious." According to Sen. Boxer, the special counsel had found evidence "so disturbing" that if Sen. Ensign had not resigned, the evidence "would have been substantial enough for consideration of expulsion."

18. Although DOJ promised publicly to examine the information referred by the Senate Ethics Committee thoroughly and to take any necessary and appropriate steps, in fact it took no further action against Sen. Ensign. As a result, there remains no open criminal investigation of

Sen. Ensign, and he has faced no charges from either DOJ or the FEC for the actions he took to

cover up his affair with Mrs. Hampton.

19.  By contrast, DOJ did indict Doug Hampton in March 2011, charging Mr. Hampton

with seven felony counts for allegedly lobbying Sen. Ensign and his staff in violation of federal

conflict of interest laws.  In June 2012, through a plea agreement, Mr. Hampton pleaded guilty to

a misdemeanor for violating the one-year lobbying ban on former Senate employees.  On

September 5, 2012, he was sentenced to one year probation.

## Plaintiff's FOIA Requests

20.  By letters dated December 13, 2010, and delivered by facsimile to the Criminal

Division, FBI, and EOUSA, plaintiff requested under the FOIA the following agency records

(including, but not limited to, electronic records and information, audiotapes, videotapes and

photographs):

> [A]ll records related to DOJ's and the Federal Bureau of
> Investigation's (FBI) investigation of Senator John Ensign
> (R-NV), including but not limited to DOJ's decision not to
> bring criminal charges against him that are not covered by
> grand jury secrecy pursuant to Rule 6(e) of the Federal
> Rules of Criminal Procedure.

21.  The Criminal Division, FBI, and EOUSA received plaintiff's FOIA requests

described in ¶ 20 by facsimile on December 13, 2010.

## Defendant's Treatment of Plaintiff's FOIA Requests

### *The Criminal Division*

22.  By letter to plaintiff dated December 21, 2010, the Criminal Division acknowledged

receipt of plaintiff's FOIA request and assigned it file number 201000892F.

23.  By letter to plaintiff dated February 22, 2011, the Criminal Division informed

plaintiff it had conducted a search and located records responsive to CREW's request, all of which it was withholding in their entirety pursuant to Exemption 7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A).  The Criminal Division advised plaintiff of its right to appeal that determination to DOJ's Office of Information Policy ("OIP").

24.  By letter to OIP dated March 14, 2011, plaintiff appealed the determination of the Criminal Division to withhold in their entirety all records responsive to plaintiff's FOIA request.

25.  By letter to plaintiff dated March 25, 2011, OIP acknowledged receipt of plaintiff's appeal described in ¶ 24.  Thereafter, by letter to plaintiff dated September 29, 2011, OIP advised plaintiff it was affirming the Criminal Division's decision to withhold all responsive records in their entirety on partly modified grounds.  Specifically, OIP asserted the records at issue are exempt from disclosure pursuant to both FOIA Exemptions 7(A) and 7(C), 5 U.S.C. § 552(b)(7)(C).  OIP provided no explanation for its determination.

26.  Plaintiff has now exhausted all applicable administrative remedies with respect to its FOIA request to the Criminal Division.

*The FBI*

27.  By letter to plaintiff dated December 16, 2010, the FBI acknowledged receipt of plaintiff's FOIA request, assigned it FOIPA Request No. 1159012-000, and indicated it was searching the indices in its Central Records System for the requested information.

28. Six days later, by letter to plaintiff dated December 22, 2010, the FBI again acknowledged receipt of plaintiff's FOIA request, and indicated that without express authorization of the "third party" – presumably Senator Ensign – any release of the information to plaintiff would violate the Privacy Act and could constitute an unwarranted invasion of

privacy protected by FOIA Exemptions 6 and 7(C).  The FBI advised plaintiff of its right to appeal that determination to OIP.

29.  By letter to OIP dated January 14, 2011, plaintiff appealed the determination of the FBI to withhold in their entirety all records responsive to plaintiff's FOIA request.

30.  By letter to plaintiff dated February 8, 2011, OIP acknowledged receipt of plaintiff's appeal described in ¶ 29.  Thereafter, by letter to plaintiff dated September 13, 2011, OIP advised plaintiff it was affirming the FBI's decision to withhold all responsive records in their entirety based on Exemption 7(C).  The OIP affirmed the FBI's use of a categorical exemption without first conducting a search for the requested records.

31.  Plaintiff has now exhausted all applicable administrative remedies with respect to its FOIA request to the FBI.

*The EOUSA*

32.  By letter to plaintiff dated December 20, 2010, EOUSA acknowledged receipt of plaintiff's FOIA request, assigned it Request Number 2010-4464, and advised plaintiff without express authorization of the "third party" – presumably Senator Ensign – any release of the requested information to plaintiff beyond public records maintained in its files would violate the Privacy Act and could constitute an unwarranted invasion of privacy protected by FOIA Exemptions 6 and 7(C).  EOUSA advised plaintiff of its right to appeal that determination to OIP.

33.  By letter to OIP dated January 14, 2011, plaintiff appealed the determination of EOUSA to withhold in their entirety all records responsive to plaintiff's FOIA request.

34.  By letter to plaintiff dated February 1, 2011, OIP acknowledged receipt of plaintiff's

appeal described in ¶ 33.  Thereafter, by letter to plaintiff dated March 28, 2011, OIP advised

plaintiff it was affirming EOUSA's decision to withhold all responsive records in their entirety

on partly modified grounds.  Specifically OIP acknowledged EOUSA had not conducted a search

for the requested records, and asserted the requested records are exempt from disclosure in their

entirety based on Exemption 7(C).

35.  Plaintiff has now exhausted all applicable administrative remedies with respect to its

FOIA request to EOUSA.

## CAUSE OF ACTION

### Violation Of The Freedom Of Information Act For
### Wrongful Withholding Of Agency Records

36.  Plaintiff repeats and re-alleges paragraphs 1-35.

37.  Defendant DOJ has wrongfully withheld agency records requested by plaintiff by

withholding from disclosure all records responsive to plaintiff's FOIA requests to the Criminal

Division, FBI, and EOUSA.

### Requested Relief

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Order defendant DOJ and its components the Criminal Division, the FBI, and EOUSA

to disclose immediately and in their entireties all records responsive to plaintiff's FOIA requests

submitted to the Criminal Division, the FBI, and EOUSA on December 13, 2010;

(2) Issue a declaration that plaintiff is entitled to disclosure of the requested records;

(3) Provide for expeditious proceedings in this action;

(4) Award plaintiff its costs and reasonably attorneys' fees in this action; and

(5) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,


_____
ANNE L. WEISMANN
(D.C. Bar No. 298190)
MELANIE SLOAN
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
   in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Facsimile: (202) 588-5020
Aweismann@citizensforethics.org

Dated: September 10, 2012