UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 12-1491 (JDB) |

**MEMORANDUM OPINION**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against defendant the U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. CREW's FOIA requests sought records regarding DOJ investigations of former U.S. Senator John Ensign. Before the Court are the parties' cross motions for summary judgment. Upon consideration of the motions, oppositions, and replies, and the entire record herein, and for the reasons set forth below, the Court will deny the Government's Motion for Summary Judgment, grant Plaintiff's Cross-Motion for Partial Summary Judgment, and order the Government to submit a Vaughn Index within 60 days.

**PROCEDURAL BACKGROUND**[1]

In 2009, Senator John Ensign publicly admitted that he had been having an affair with a former campaign staffer, Cynthia Hampton, who was later identified as the wife of Senator Ensign's former chief of staff, Doug Hampton. Pl.'s Stmt of Material Facts Not In Dispute

---
[1] The facts set forth herein are drawn primarily from the parties' statements of material facts submitted pursuant to Local Rule 7(h).

1

("Pl.'s Stmt of Facts") ¶ 4. Following this revelation, Senator Ensign became the subject of a criminal investigation regarding alleged actions he took in the aftermath of the affair. See, e.g., Pl.'s Stmt of Facts ¶ 9; Declaration of David Hardy ("Hardy Decl.") Ex. E (Eric Lichtblau & Eric Lipton, More Messages Link Senator to Job Effort, N.Y. Times, Mar. 20, 2010). But later that year, Senator Ensign publicly announced that he was no longer the subject of a criminal investigation, and that DOJ did not plan to bring any charges against him. See, e.g., Pl.'s Stmt of Facts ¶ 10; Hardy Decl. Ex. A (Steve Tetreault & Jeff German, 'No Longer A Target': News Again Good For Ensign, Las Vegas Review-Journal, Dec. 1, 2010).

On December 13, 2010, CREW submitted identical FOIA requests to DOJ component agencies, the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the Criminal Division of DOJ ("CRM"). Def.'s Stmt of Material Facts Not In Dispute ("Def.'s Stmt of Facts") ¶¶ 1, 10, 16. Each of the three requests sought "all records related to DOJ's and the [FBI's] investigation of Senator John Ensign (R-NV), including but not limited to DOJ's decision not to bring criminal charges against him that are not covered by grand jury secrecy . . . ." Def.'s Stmt of Facts ¶¶ 1, 10, 16.

CREW maintained that it sought these records "to contribute to greater public awareness of alleged malfeasance and possible criminal behavior by Sen. Ensign," and to "shed light on the conduct of DOJ and the FBI in conducting the investigation of Sen. Ensign, and its decision to close the investigations without bringing charges against him." Def.'s Mot. for Summ. J. ("Def.'s Mot.") 15-16; Hardy Decl. Ex. A; Declaration of Sean Vanek ("Vanek Decl.") Ex. A; Declaration of John Cunningham ("Cunningham Decl.") Ex. 1.

The FBI issued its response on December 22, 2010, the EOUSA issued its response on December 20, 2010, and CRM issued its response on February 22, 2010. Def.'s Stmt of Facts ¶¶

3, 11, 18. Each agency categorically denied CREW's requests under FOIA Exemptions 6 and 7(C).[2] Def.'s Stmt of Facts, ¶¶ 9, 15, 23.

The FBI and the EOUSA did not perform a search for responsive records, while CRM searched for and located responsive records. Pl.'s Stmt of Facts ¶ 3; Hardy Decl. Ex. F; Def.'s Stmt of Facts ¶¶ 14, 18; Vanek Decl. ¶¶ 13-14, Ex. D; Cunningham Decl. ¶ 6, Ex. 3.

CREW appealed all three denials to DOJ's Office of Information Policy ("OIP"). Def.'s Stmt of Facts ¶¶ 6, 13, 20. OIP, in turn, affirmed all three denials on slightly differing grounds, but common to each denial was an assertion that the withheld records are exempt from disclosure under Exemption 7(C). Def.'s Stmt of Facts ¶¶ 8, 14, 22.

Following OIP's denials, CREW filed this suit on September 10, 2012, alleging that "Defendant DOJ has wrongfully withheld agency records requested by plaintiff by withholding from disclosure all records responsive to plaintiff's FOIA requests to the Criminal Division, FBI, and EOUSA," and requesting the immediate disclosure of all responsive records. Compl. ¶ 37. DOJ has now filed a Motion for Summary Judgment, and CREW has filed a Cross-Motion for Partial Summary Judgment requesting that the Court order DOJ to submit a <u>Vaughn</u> Index.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial

---

[2] Initially, CRM denied CREW's request under FOIA Exemption 7(A). Cunningham Decl. Ex. 3. On appeal, OIP affirmed on partly modified grounds, stating that the information was properly withheld under Exemptions 7(A) and 7(C). Def.'s Stmt of Facts ¶ 22. In its Statement of Facts here, DOJ asserted that CRM is categorically denying CREW's requests under Exemptions 6 and 7(C), and did not argue that the records were properly withheld under Exemption 7(A). <u>Id.</u> Relatedly, although the EOUSA asserted Exemptions 6 and 7(C), OIP affirmed the EOUSA's decision only as to Exemption 7(C), but in this litigation, DOJ similarly asserts that the EOUSA is categorically denying CREW's requests under Exemptions 6 and 7(C). Def.'s Stmt of Facts ¶¶ 11, 14, 15. Thus, the Court's analysis will be limited to whether the information was properly withheld under Exemptions 6 and 7(C).

responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In a FOIA case, the district court may award summary judgment based solely on information provided in an agency's affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973). Agency declarations are accorded "a presumption of good faith," Long v. U.S. Dep't of Justice, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted), and to rebut them plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt," Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).

The FOIA requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). "If an agency improperly withholds any documents, the district court has jurisdiction to order their production." U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 755 (1989); 5 U.S.C. § 552(a)(4)(B). The court reviews an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B), and the agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted); accord Maydak

4

v. U.S. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure . . . .'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

## **DISCUSSION**

In this case, various DOJ component agencies categorically denied CREW's request under Exemptions 6 and 7(C). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). Under both provisions, agencies and reviewing courts must "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information." Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

But because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects," see Reporters Comm., 489 U.S. at 756, Exemption 7(C) "establishes a lower bar for withholding material." ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011) (citing U.S. Dep't of Defense v. FLRA, 510 U.S. 487, 496 n.6 (1994)). Thus, courts in this Circuit generally consider whether agencies have met the requirements of Exemption 7(C); if they have, there is no need for further analysis. See, e.g., ACLU, 655 F.3d at 6.

At the outset, for Exemption 7(C) to apply, the requested records must have been compiled for law enforcement purposes. Jefferson v. U.S. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176-77 (D.C. Cir. 2002). The parties agree that the requested records were "compiled for law enforcement purposes"; accordingly, the parties agree that Exemption 7(C) applies. Def.'s Mot. 11-12; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") 17 n.26.

DOJ bears the burden of showing that the requested records are clearly exempt under Exemption 7(C), and ordinarily it must do so by "provid[ing] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F. 2d 242, 251 (D.C. Cir. 1977); Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973). Thus, the usual agency practice is to submit an affidavit (a "Vaughn Index") specifically identifying each document that it seeks to withhold and any proposed redactions of those documents, and providing a "relatively detailed justification" for each assertion. See Kimberlin v. U.S. Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998) ("[T]he Government must make that showing in its Vaughn index and in such affidavits as it may submit therewith." (citing Vaughn, 484 F.2d at 827-28)). Vaughn indices "permit adequate adversary testing" of claimed exemptions, and allow the plaintiff to "respond to the justification[s] offered by the agency and, most importantly, the court can assess on a document-by-document basis . . . whether the Government is justified in withholding the listed material under the specific FOIA exemption claimed." CREW v. U.S. Dep't of Justice, 840 F. Supp. 2d 226, 230 (D.D.C. 2012) ("CREW I") (quoting Kimberlin, 139 F.3d at 950).

In some cases, however, agencies are not required to make such a detailed showing: they may categorically deny FOIA requests "when the range of circumstances included in the

6

category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied . . . ." Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995) (citing Reporters Comm., 489 U.S. at 779). In Reporters Committee, for example, the Supreme Court held that requests for third-party FBI rap sheets could be categorically denied under Exemption 7(C) because privacy interests "characteristically" outweighed public interests with respect to those records. 489 U.S. at 780.

This Circuit has recognized in the context of Exemption 7(C) that "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." Martin v. U.S. Dep't of Justice, 488 F.3d 446, 457 (D.C. Cir. 2007) (citing Reporters Comm., 489 U.S. at 780). Recognizing this difficulty, the FBI, the EOUSA, and CRM have developed policies for responding to requests involving third-party information. Def.'s Mot. 1-2. Unless a FOIA requester "identifies a public interest in disclosure that outweighs the privacy interests of the third party, or submits proof of death or a privacy waiver, it is the general practice of the FBI, EOUSA, and CRM to withhold third-party records pursuant to FOIA Exemptions 6 and/or 7(C)." Def.'s Mot. 1-2. In other words, the agencies categorically deny all requests for law enforcement records regarding third parties in the absence of an "overriding" public interest (or proof of death or a privacy waiver, neither of which are at issue in this case), and DOJ concluded here that CREW had not articulated an "overriding" public interest. Def.'s Stmt of Facts ¶¶ 8, 14, 22.

CREW challenges that conclusion, arguing that because the public interests that it has identified outweigh the privacy interests at stake, DOJ cannot continue to categorically withhold the requested documents. Pl.'s Mot. 3-4. Instead, CREW argues, DOJ must submit a Vaughn Index so that the Court may "assess on a document-by-document basis . . . whether the

7

Government is justified" in asserting Exemption 7(C). Pl.'s Mot. 4. DOJ responds that it correctly refused CREW's request because Senator Ensign and other third parties have substantial privacy interests in the requested records, which CREW has not overcome by presenting an overriding public interest. Def.'s Mot. 9.

The Court reviews de novo DOJ's conclusion that the requested records fall under Exemption 7(C). 5 U.S.C. § 552(a)(4)(B). To make this determination, the Court "must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." ACLU, 655 F.3d at 6 (quoting Reporters Comm., 489 U.S. at 776). The only recognized public interest under Exemption 7(C) is "the extent to which disclosure advances 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' . . . thereby furthering 'the citizens' right to be informed about what their government is up to.'" ACLU, 655 F.3d at 6 (quoting Reporters Comm., 489 U.S. at 772-73) (internal quotation marks omitted).

### 1. Factual Background

CREW seeks records relating to DOJ's criminal investigation of Senator Ensign following his announcement in 2009 that he had been having an affair with his former chief of staff's wife, Cynthia Hampton, who was also a former staffer. DOJ's investigation was sparked by Senator Ensign's alleged attempts to cover up the affair. Hardy Decl. Ex. A (Steve Tetreault & Jeff German, 'No Longer a Target': News again good for Ensign, Las Vegas Review-Journal, Dec. 1, 2010). According to news reports and a report compiled by a special counsel to the Senate Select Committee on Ethics, Senator Ensign's parents gave the Hamptons $96,000 after the senator fired them—before the affair was publicly known. Pl.'s Stmt of Facts ¶ 6; Hardy Decl. Ex. B (John Bresnahan & Manu Raju, DOJ drops Ensign investigation, Politico, Dec. 1,

2010); Report of the Preliminary Inquiry Into the Matter of Senator John E. Ensign, Submitted to the S. Select Comm. on Ethics By Carol Elder Bruce, Special Counsel, May 10, 2011, at 4 ("Special Counsel Report"). Those reports also indicated that after Mr. Hampton was fired, but before the affair came to light, he lobbied Senator Ensign's office on several occasions. Hardy Decl. Ex. D (Eric Lichtblau & Eric Lipton, Senator's Aid After Affair Raises Flags Over Ethics, N.Y. Times, Oct. 1, 2009).

The DOJ investigation focused on whether Senator Ensign improperly made his office available to Mr. Hampton in violation of federal laws prohibiting certain Senate aides from lobbying senators for a year after they leave the Senate. Hardy Decl. Ex. E (Eric Lichtblau & Eric Lipton, More Messages Link Senator to Job Effort, N.Y. Times, Mar. 10, 2010). In late 2010, Senator Ensign announced that DOJ had informed him that the investigation was complete, and that DOJ had decided not to charge him with any crimes. Special Counsel Report at 39-41.

The Senate Select Committee on Ethics opened a probe regarding conduct similar to that investigated by DOJ. Before the special counsel appointed by the committee could issue her report, Senator Ensign announced his resignation—the day before his scheduled sworn deposition. Special Counsel Report at 1. Following his departure from the Senate, the special counsel, Carol Elder Bruce, issued her report, which concluded that some of the actions the senator took to cover up his affair were illegal. Id. at 3. Further, the special counsel recommended that the Ethics Committee refer the matters to DOJ to consider whether Senator Ensign should be criminally prosecuted based on the evidence collected in her report. Id. at 7. The Ethics Committee voted to accept her recommendation, and referred her findings to DOJ.

Pl.'s Mot. Ex. A (Manu Raju & John Bresnahan, Ensign Report's Bombshells, Politico, May 12, 2011). Explaining the vote, Ethics Committee Chair Senator Barbara Boxer said:

> These findings are so disturbing . . . that had Senator Ensign not resigned and had we been able to proceed to that adjudication, that it would have been substantial enough to warrant the consideration of expulsion.

Id. Subsequently, DOJ again declined to pursue criminal charges against Senator Ensign. Pl.'s Mot. Ex. D (John Bresnahan & Manu Raju, Husband of Ensign mistress indicted, Politico, Mar. 24, 2011).

### 2. Senator Ensign Has a Significant Privacy Interest in the Substance of the Requested Investigative Records

In the balancing test required by Exemption 7(C), the Court must first "examine the privacy interests implicated by disclosure to third parties of material contained in investigatory files." Nation Magazine, 71 F.3d at 894. This Circuit has repeatedly recognized that disclosure of the fact that an individual was the subject of a law enforcement investigation implicates a substantial—and therefore cognizable—privacy interest. See, e.g., id.; Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 864 (D.C. Cir. 1981). Thus, the average FOIA request seeking law enforcement records concerning a third party implicates a substantial privacy interest: that of the third party who may wish to keep secret the fact that they were targeted in a criminal investigation. "That privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." Nation Magazine, 71 F.3d at 894.

In addition, when the subject of the criminal investigation at issue has not been charged with a crime, much less convicted, the third party's privacy interest is particularly strong. ACLU, 655 F.3d at 7 ("Typically, the decision not to prosecute insulates individuals who have been investigated but not charged from th[e] rather significant intrusion into their lives" caused by

10

public indictment.) (quoting Fund for Constitutional Gov't, 656 F.2d at 864). And "while it is true that Government officials may have a somewhat diminished privacy interest," Quiñon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996), "[t]he degree of intrusion [caused by disclosure] is indeed potentially augmented by the fact that the individual is a well known figure," Fund for Constitutional Gov't, 656 F.2d at 865. But this Circuit has also recognized that "the magnitude of [a third party's] privacy interest turns on whether disclosure might result in unwarranted association with criminal activity or reputational harm." Nation Magazine, 71 F.3d at 894.

Here, Senator Ensign has not been criminally charged. He has also resigned from the Senate. Both of these facts lend weight to his privacy interest: having retreated to private life, Senator Ensign is no longer in the spotlight, and "renewed publicity brings with it a renewed invasion of privacy." Bast v. U.S. Dep't of Justice, 665 F.2d 1251, 1255 (D.C. Cir. 1981). Yet as CREW points out, Senator Ensign has publicly disclosed the fact that he was the target of a criminal investigation. Senator Ensign's privacy interest in a fact already known to the public is substantially diminished; all the more so because he was the person responsible for disclosing it. Kimberlin, 139 F.3d at 949 (third party statement to press admitting he was subject of investigation "undoubtedly does diminish his interest in privacy"); CREW v. U.S. Dep't of Justice, 846 F. Supp. 2d 63, 72 (D.D.C. 2012) ("CREW II") (where subject publicly acknowledged fact of investigation, privacy interest in that fact is substantially diminished); CREW I, 840 F. Supp. 2d at 234 (same).

Although Senator Ensign does not have a substantial privacy interest in the fact that he was targeted in a criminal investigation, he retains a cognizable privacy interest in the contents of the file. Kimberlin, 139 F.3d at 949 ("[S]urely Thar did not, merely by acknowledging the investigation . . . , waive all his interest in keeping the contents of the . . . file confidential.");

CREW II, 846 F. Supp. 2d at 72 ("[Rep.] Lewis does not retain a significant privacy interest in the fact of an investigation, [but] he nevertheless retains a privacy interest in the substance of that investigation.") (emphasis in original); see Reporters Comm., 489 U.S. at 763 ("privacy encompass[es] the individual's control of information concerning his or her person"). In addition to reopening old wounds, disclosure of DOJ's investigative file could result in new revelations of misconduct, even if that misconduct did not rise to the level of a criminal violation. Bast, 665 F.2d at 1255; cf. Fund for Constitutional Gov't, 656 F.2d at 865 (public officials are forced to "defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings"). Indeed, that is one of CREW's asserted justifications for requesting the records: "greater public awareness of alleged malfeasance and possible criminal behavior by Sen. Ensign." Def.'s Mot. 15-16. Details of Senator Ensign's conduct that were previously reported by the press or by the special counsel's report could receive "authoritative confirmation from an official source," and he retains a privacy interest in the file as a result. Kimberlin, 139 F.3d at 949 (citing Bast, 665 F.2d at 1255).

DOJ also argues that because Exemption 7(C) protects the privacy interests of other third parties mentioned in investigative records, such as witnesses, informants, and investigators, the privacy interests at stake here are substantial. Def.'s Mot. 19. True, "a long line of FOIA cases [in this Circuit] hold[s] that disclosure of the identities of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy and is thus exempt under 7(C)." Nation Magazine, 71 F.3d at 896 (emphasis in original) (listing cases). Here, of course, the identities of some other significant individuals (i.e., the Hamptons) are already public. To the extent that disclosure of the investigative files would reveal the identities of other individuals, "those portions of responsive records are categorically exempt." Id. But this does not mean that

DOJ may withhold entire files on that basis; rather, DOJ must redact any identifying information of individuals mentioned in investigative files. See id. ("[S]uch a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files."). Put another way, those individuals lack a privacy interest in the substance of the files, unless the substance could reveal their identities. At bottom, the privacy interests of third parties other than Senator Ensign are adequately protected by redaction, and should not be weighed in the balance of public and private interests. But see CREW II, 846 F. Supp. 2d at 73 ("[A]ny third parties mentioned in those files, including, in particular, informants and witnesses, have a significant interest in their contents not being disclosed.").

Accordingly, although Senator Ensign's privacy interest in the fact that he was the subject of a criminal investigation is substantially diminished because of his public announcement, he still enjoys a significant privacy interest in the substance of the investigative files. The privacy interests of other third parties mentioned in the files can be protected adequately by redacting any identifying information for individuals not already publicly known.

### 3. CREW Has Articulated a Significant Public Interest in Disclosure of the Requested Records

To overcome the privacy interests at stake here, CREW must at minimum "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest." Nat'l Archives & Record Admin. v. Favish, 541 U.S. 157, 158 (2004). Under Exemption 7(C), "the public interest to be taken into the balance is that in '[o]fficial information that sheds light on an agency's performance of its statutory duties.'" Quiñon, 86 F.3d at 1231 (quoting Reporters Comm., 489 U.S. at 773). "Disclosure of information that 'reveals little or nothing about an agency's own conduct' does not further the public interest envisaged by FOIA." Id.; CREW II,

13

846 F. Supp. 2d at 73 (FOIA concerned with "promoting 'the citizens' right to be informed about what their government is up to'") (quoting Reporters Comm., 489 U.S. at 773) (internal quotation marks omitted). But even law enforcement records pertaining to a third party "may still be cloaked with the public interest if the information would shed light on agency action." Nation Magazine, 71 F.3d at 895.

Under these principles, CREW's first asserted public interest is insufficient. In its request, CREW maintained that the requested records "are likely to contribute to greater public awareness of alleged malfeasance and possible criminal behavior by Sen. Ensign." Def.'s Mot. 15-16. Shedding light on Senator Ensign's conduct would "reveal[] little or nothing about" DOJ's conduct. Reporters Comm., 489 U.S. at 773; Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 666 (where type of information sought "is simply not very probative of an agency's behavior or performance," public interest is weak) (citation and internal quotation marks omitted). Thus, contributing to greater public awareness of Senator Ensign's conduct does not in itself serve FOIA's central purpose of opening agency action to public scrutiny. Nation Magazine, 71 F.3d at 894-95.

By contrast, CREW's second asserted public interest is substantial. In its request, CREW contended that the requested records "would shed light on the conduct of DOJ and the FBI in conducting the investigation of Sen. Ensign, and its decision to close the investigations without bringing charges against him."[3] Def.'s Mot. at 15-16. Although DOJ argues that Senator Ensign's alleged misconduct "is of a highly personal nature," the public has a substantial interest in DOJ's decision not to prosecute him, considering the circumstances. ACLU, 655 F.3d at 14

---

[3] DOJ complains that CREW did not rely on the public interest in DOJ's "performance of its statutory duties" at the administrative level, and that as a result CREW should not be permitted to rely on it here. Def.'s Opp'n & Reply 13 n.1. But CREW proffered an interest in how DOJ and the FBI conducted the investigation and in how DOJ decided not to prosecute Senator Ensign. Def.'s Mot. 3. DOJ's statutory duties encompass both matters. See, e.g., 28 U.S.C. § 533.

14

(quoting Reporters Comm., 489 U.S. at 766 n.18) ("[M]atters of substantive law enforcement policy are properly the subject of public concern."). According to reports, DOJ's investigation focused on possibly criminal actions Senator Ensign allegedly took to cover up his affair, but DOJ closed that investigation without bringing charges. After that decision took place, the Ethics Committee's special counsel concluded that there was substantial credible evidence that Senator Ensign committed several violations of federal law. Special Counsel Report at 3-6. The special counsel also recommended that the Ethics Committee refer her conclusions to DOJ, and the Ethics Committee did so. Following referral, DOJ again closed the investigation of Senator Ensign. CREW's request specifically relates to those decisions not to prosecute Senator Ensign, and the requested records "could well be suffused, from top to bottom, with information about DOJ's performance of its duties." Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 598 F. Supp. 2d 93, 96 (D.D.C. 2009).

These facts demonstrate that the articulated public interest is in fact more significant than just an "oblique reference[] to information sought to 'open [] up government action to the light of public scrutiny.'" Def.'s Mot. 17 (quoting Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 211 (D.D.C. 2010)).[4] CREW wants records showing what efforts DOJ took to investigate serious allegations of criminal conduct backed by "substantial credible evidence"; moreover, the subject of the widely publicized investigation(s) was a former senator who resigned. Special Counsel Report at 3-6. DOJ purports to acknowledge that CREW is not required to allege DOJ misconduct in order successfully to articulate a public interest, see Def.'s Opp'n & Reply to Pl.'s Cross-Motion & Def.'s Mot. 15, but if disclosure of the requested records in these circumstances would not serve the public interest of promoting the citizens' right

---

[4] DOJ's argument on this front is somewhat puzzling, given FOIA's core purpose of "open[ing] agency action to the light of public scrutiny." ACLU, 655 F.3d at 5 (quoting Dep't of the Air Force v. Rose, 425 U.S. 325, 361 (1976)).

to be informed about "what their government is up to," it is hard to imagine DOJ ever accepting any public interest other than misconduct. Reporters Comm., 489 U.S. at 772-73.

To be sure, generally speaking, "a decision not to prosecute a person, standing alone, does very little to 'shed[] light on the agency's performance of its statutory duties.'" Judicial Watch, Inc., 898 F. Supp 2d 93, 106 (D.D.C. 2012) (citing Reporters Comm., 489 U.S. at 773). Records regarding particular decisions whether to prosecute "represent only a single data point," and so are less informative about the agency's conduct than compilations of charging decisions. Venkataram v. Office of Info. Policy, No. 09-6520, 2013 WL 3871730, at *12-13 (D.N.J. July 25, 2013). But the public interest in disclosure of records relating to a single decision whether to prosecute can be substantial in some circumstances. See id. Widespread media attention, an ongoing public policy discussion, and the public profile of the subject of the investigation all contribute to the public's interest in disclosure. See ACLU, 655 F.3d at 12; Kimberlin, 139 F.3d at 949.

Some of the public's interest in DOJ's handling of the investigation here may indeed result from the "salacious reports of a [Senator's] extramarital affair," as DOJ argues. Def.'s Mot 17. But the public has a clear interest in knowing why "the government agency responsible for investigating and, if warranted, prosecuting [members of Congress] for alleged illegal conduct" decided not to prosecute a Senator for alleged violations of federal criminal law. CREW II, 846 F. Supp. 2d at 74 (quoting CREW I, 840 F. Supp. 2d at 234). Of course, not every allegation of misconduct that results in an investigation gives rise to this substantial public interest. Yet here, DOJ exercised its discretion regarding a high ranking and high profile elected official who resigned following accusations of significant public corruption, against a backdrop of "substantial credible evidence." Kimberlin, 139 F.3d at 949 ("[I]t will ordinarily be enough for

the court to consider . . . the rank of the public official involved and the seriousness of the misconduct alleged." (citing Stern v. FBI, 737 F.2d 84, 94 (D.C. Cir. 1984)).

In a very similar case, a court in this District found a substantial public interest where Congress passed a specific piece of legislation directing DOJ to investigate a member of the House of Representatives accused of misconduct. See CREW I, 840 F. Supp. 2d at 234. Here, although Congress did not pass any legislation regarding Senator Ensign's misconduct, the Senate Ethics Committee specifically referred the special counsel's findings and recommendations to the DOJ for investigation. Put differently, the allegations against Senator Ensign have risen above the level of finger-pointing—indeed, Senator Ensign purportedly resigned under threat of expulsion from the Senate. Finding a strong public interest would hardly require "DOJ to search for responsive records at the first hint of congressional impropriety in the media." Def.'s Mot. 20. As in CREW I, the public's interest here in disclosure of information regarding DOJ's investigation of a member of Congress accused of illegal conduct is "very strong"—and quite specific. 840 F. Supp. 2d at 234; see Favish, 541 U.S. at 158.

Moreover, the topic of how DOJ has handled investigations and exercised its discretion with respect to members of Congress has received widespread media attention. ACLU, 655 F.3d at 12 (citing widespread media attention as factor contributing to weight of public interest); see, e.g., Pl.'s Mot. Ex. A (Charlie Savage, Justice Dept. Is Criticized as Corruption Cases Close, N.Y. TIMES, Dec. 20, 2010); Pl.'s Mot. Ex. B, Alana Goodman, Is the Justice Department Covering Up Congressional Corruption?, National Legal and Policy Center, Jan. 2, 2011). The requested records that plaintiffs seek would "inform this ongoing public policy discussion by shedding light on" how DOJ investigates allegations of public corruption at the highest levels and makes charging decisions regarding those allegations. ACLU, 655 F.3d at 13. Indeed, the

public—and Congress—would benefit from knowing that DOJ gives serious consideration to referrals from Congress.

Consequently, the Court finds that CREW has identified a significant and specific public interest in disclosure of the requested records.

### 4. Balancing the Interests

At this stage, CREW mainly takes issue with DOJ's policy of categorically withholding the requested documents: that is why CREW seeks an order requiring DOJ to produce a <u>Vaughn</u> Index. And indeed, the Court need not strain to balance the identified interests against each other in the abstract, blind to what information the records contain. <u>See</u> <u>Mead</u>, 566 F.2d at 251. But CREW is not challenging DOJ's categorical withholding policy on its face;[5] it only challenges DOJ's application of the rule here. For good reason. In cases where requesters of third-party law enforcement records do not identify a significant public interest,[6] the balance of interests "'characteristically supports an inference' that the statutory requirements for exemption are satisfied." <u>Graff v. FBI</u>, 822 F. Supp. 2d 23, 31-33 (D.D.C. 2011) (quoting <u>Nation Magazine</u>, 71 F.3d at 893). "Something . . . outweighs nothing every time" in balancing privacy interests against public interests, and in many cases law enforcement records regarding third parties involve privacy interests. <u>Nat'l Ass'n of Retired Fed. Emps. v. Horner</u>, 879 F.2d 873, 879 (D.C. Cir. 1989); <u>see</u> <u>Nation Magazine</u>, 71 F.3d at 893 (rules exempting entire categories of records from disclosure under Exemption 7(C) "are sometimes permitted, even encouraged, as a workable manner of meeting FOIA obligations" (citing <u>Reporters Comm.</u>, 489 U.S. at 779)).

Here, though, CREW has articulated a substantial public interest. Application of DOJ's categorical rule is therefore not appropriate. <u>Reporters Comm.</u>, 489 U.S. at 776 (categorical

---

[5] The policy was recently upheld by another court in this District. <u>See</u> <u>Graff v. FBI</u>, 822 F. Supp. 2d 23 (D.D.C. 2011).

[6] Or, as the DOJ policy states, proof of death or a consent waiver. Def.'s Mot. 1-2.

rules may be employed only when the balance "characteristically tips in one direction"). Hence, the Court does not have to make a blanket determination as to whether the public interest in disclosure outweighs the substantial privacy interests of Senator Ensign. Those interests may vary with respect to each responsive document. See Kimberlin, 139 F.3d at 950. The requested records may contain details of Senator Ensign's alleged misconduct that have been disclosed in the special counsel's report, which is freely available to the public. See Special Counsel Report; Pl.'s Mot. 22. Whether they do contain overlapping details and whether that will affect the balance of interests will be more easily determined on a document-by-document basis. See Mead, 566 F.2d at 251; Davis, 968 F.2d at 1279 (plaintiff bears burden of "pointing to specific information in the public domain that appears to duplicate that being withheld" (quoting Afshar v. U.S. Dep't of State, 702 F.2d 1125, 1130 (1983))).

Finally, submission of a Vaughn Index here will not harm Senator Ensign's privacy interests in not being identified as the subject of an investigation—that ship has sailed. CREW II, 846 F. Supp. 2d at 72 (production of Vaughn Index would not affect privacy interests of congressman who publicly acknowledged investigation); CREW I, 840 F. Supp. 2d at 233 (same). And the privacy interests of other third parties mentioned in the records but not already publicly known can be protected adequately by redaction of identifying information. See Nation Magazine, 71 F.3d at 896.

Thus, the Court will order that DOJ submit a Vaughn Index specifically identifying which documents it intends to withhold, providing a "relatively detailed justification" for each.

## **CONCLUSION**

For the foregoing reasons, the Court will deny the Government's Motion for Summary Judgment, grant Plaintiff's Cross-Motion for Partial Summary Judgment, and order the

19

Government to submit a <u>Vaughn</u> Index within 60 days. A separate order has been issued on this date.

/s/

JOHN D. BATES  
United States District Judge

Dated: <u>August 23, 2013</u>