**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 12-1491 (JDB) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR AN AWARD OF
<u>ATTORNEYS' FEES AND COSTS</u>**

### <u>INTRODUCTION</u>

Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) initiated this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, on February 14, 2011, seeking the disclosure of records maintained by defendant Department of Justice (DOJ) relating to the agency's criminal investigation of former Senator John Ensign. Despite the wealth of information in the public domain concerning the actions of Sen. Ensign that underlie this investigation, as well as investigations conducted by the Federal Election Commission (FEC) and the Senate Select Committee on Ethics (Senate Ethics Committee) for the same and related conduct, DOJ categorically denied CREW's request under FOIA Exemptions 6 and 7(C). According to DOJ, there was no document it could release publicly that would not infringe on Sen. Ensign's privacy.

DOJ's position necessitated several rounds of merits briefing: first, to adjudicate the government's claim it could categorically withhold all potentially responsive documents to

protect Sen. Ensign's privacy, and second, to resolve DOJ's request that, even before the agency

completed processing CREW's requests, it be permitted to justify the withholding of a mere

sampling of documents, rather than justify all withholdings.  DOJ lost both motions, with the

direct result that CREW eventually received thousands of pages of responsive documents from

DOJ pertaining to its Ensign investigation.  Information gleaned from those documents formed

the basis for a detailed report CREW produced and was prominently featured in an article in the

*New York Times* and other national and regional publications.  The clear nexus between CREW's

litigation of this matter and DOJ's disclosure of documents demonstrates CREW's eligibility for

an award of attorneys' fees and costs – something DOJ does not dispute.  The sole remaining

issue concerns CREW's *entitlement* to an award of fees and costs under the four-factor balancing

test this Circuit applies.  As demonstrated below, this case presents the precise set of

circumstances justifying the requested fees and costs.

## **FACTUAL BACKGROUND**[1]

A.      *DOJ's Criminal Investigation of Sen. Ensign*

In 2009, Sen. Ensign admitted publicly he had been having an affair with Cynthia

Hampton, a former campaign staff and the wife of Sen. Ensign's former chief of staff, Doug

Hampton.[2]  Following this revelation, as disclosed by documents provided CREW in response to

the FOIA requests at issue, DOJ began a public corruption investigation on October 19, 2009, to

determine if Sen. Ensign had violated criminal statutes restricting lobbying activities, denied

---

[1] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 11-1) provides a more complete background.

[2] *CREW v. U.S. Dep't of Justice*, 978 F. Supp. 2d 1 (D.C. Cir. 2013) (*CREW v. DOJ*) (Dkt. 15).

constituents of honest services, and violated campaign finance laws by having his parents pay $96,000 to Cynthia Hampton, his mistress and the wife of his former aide, Doug Hampton.[3]  In December 2010, Sen. Ensign announced publicly he no longer was the target of a criminal investigation by DOJ, and that DOJ had no plans to charge him with any crimes related to the actions he took with respect to his extramarital affair.[4]  Sen. Ensign's office issued a written statement that provided in part: "Senator Ensign is certainly pleased that the Department of Justice no longer views him as a target in their investigation . . . Our office and the Senator have been cooperative with this investigation."[5]  Documents the FBI released to CREW reveal that DOJ actually made the decision not to pursue charges against Sen. Ensign on March 25, 2011,[6] and officially closed the investigation more than one year later, on June 12, 2012.[7]

      **B.**    *CREW's FOIA Requests And DOJ's Treatment*

By letters dated December 13, 2010, to DOJ's components the Criminal Division (CRM),

---

[3] FBI document 58-C-WF-24037-1 (FBI Letterhead Memorandum describing predication of investigation and summarizing issues to be investigated) (references are to the FBI serial numbers on the documents released by the FBI), *available at* http://www.scribd.com/doc/204296878/Responsive-document-FBI-CREW-Regarding-Investigation-into-John-Ensign-2-3-14.

[4] Steve Tetreault and Jeff German, <u>News Again Good For Ensign</u>, *Las Vegas Review-Journal*, December 1, 2010, *available at* http://www.reviewjournal.com/news/politics/news-again-good-ensign.

[5] *Id.*

[6] FBI document 58-C-WF-241033-93 (FBI Letterhead Memorandum describing case status), *available at* http://www.scribd.com/doc/204296878/Responsive-document-FBI-CREW-Regarding-Investigation-into-John-Ensign-2-3-14.

[7] DOJ Form OBD-25, Notice of Closed Files, *available at* http://www.scribd.com/doc/213134860/Responsive-Docs-FBI-CREW-Regarding-Investigation-of-John-Ensign-3-18-14.

Executive Office of U.S. Attorneys (EOUSA) and FBI, CREW requested under the FOIA:

> all records related to DOJ's and the [FBI's] investigation of Senator John Ensign (R-NV), including but not limited to DOJ's decision not to bring criminal charges against him that are not covered by grant jury secrecy[.]

*CREW v. DOJ*, 978 F. Supp. 2d at 1.

### 1. The FBI

The FBI acknowledged receiving CREW's request by letter dated December 16, 2010, and indicated it was searching its Central Records System indices for responsive records. Exhibit B to Declaration of David M. Hardy (Hardy Decl.) (Dkt. 8-2).   Less than one week later, by letter dated December 22, 2010, the FBI advised CREW that without express authorization and consent "of the third party" – presumably Sen. Ensign – the FBI's release of any information to plaintiff would violate the Privacy Act and could constitute an unwarranted invasion of privacy protected by Exemptions 6 and 7(C).  *Id.*   On January 21, 2011, CREW administratively appealed this determination, Exhibit D to Hardy Decl., and by letter dated September 13, 2011, DOJ's Office of Information Policy (OIP) affirmed the FBI's decision, including its use of a categorical exemption without first conducting a search of responsive records.  *Id.*

### 2. The Criminal Division

By letter to CREW dated December 21, 2010, CRM acknowledged receipt of CREW's FOIA request and advised CREW it would conduct a search for responsive records.  Exhibit 2 to Declaration of John E. Cunningham III (Cunningham Decl.) (Dkt. 8-4).  In a letter dated February 22, 2011, CRM informed CREW it had located responsive records, all of which it was withholding in their entirety pursuant to FOIA Exemption 7(A) as related "to open and on-going law enforcement proceedings in the District of Columbia."  Exhibit 3 to Cunningham Decl.

CREW filed an administrative appeal from this decision on March 14, 2011, and by letter dated

September 19, 2011, OIP advised CREW it was affirming CRM's denial in full "on partly

modified grounds."  Exhibit 5 to Cunningham Decl.  Specifically, DOJ stated the requested

information was withheld properly pursuant to Exemptions 7(A) and 7(C).  *Id.*

### 3. EOUSA

By form letter to CREW dated December 13, 2010, EOUSA acknowledged receipt of

CREW's FOIA request and indicated that without express authorization and consent of "the third

party" – an apparent reference to Sen. Ensign – any release of information to CREW would

violate the Privacy Act and would constitute an unwarranted invasion of privacy protected by

FOIA Exemptions 6 and 7(C).  Exhibit B to Declaration of Sean J. Vanek (Vanek Decl.) (Dkt. 8-

3).  CREW administratively appealed this determination with OIP on January 14, 2011, *id.*, and

by letter dated March 28, 2011, OIP stated it was affirming EOUSA's decision on partly

modified grounds.  Exhibit D to Vanek Decl.  Specifically, OIP acknowledged EOUSA had not

conducted any search for responsive records, and asserted such records are exempt in their

entirety based on Exemption 7(C).  *Id.*

### C.   *Proceedings in This Court*

CREW initiated this action on September 10, 2012, challenging DOJ's decision to

"categorically" withhold on privacy grounds all potentially responsive information concerning

the agency's investigation and prosecution of Sen. Ensign.  DOJ moved for summary judgment

on February 18, 2012 (Dkt. No. 8), arguing that under judicially sanctioned agency policies, all

potentially responsive information was categorically exempt from disclosure on privacy grounds,

and that the agency therefore was not even obligated to conduct a search or justify the

withholding of particular records.  CREW opposed DOJ's motion and cross-moved for summary

judgment on January 28, 2013 (Dkts. Nos. 10 and 11).  CREW challenged the agency's

categorical withholding of all responsive documents given the public interest in the requested

information, and asked the Court to require DOJ to submit a *Vaughn* index to assess the agency's

withholdings on a document-by-document basis.

On August 23, 2013, following full briefing by the parties, the Court denied DOJ's

motion for summary judgment, granted CREW's cross-motion for partial summary judgment,

and ordered DOJ to submit a *Vaughn* index within 60 days.  The Court found "Sen. Ensign does

not have a substantial privacy interest in the fact that he was targeted in a criminal

investigation," but recognized "he retains a cognizable privacy interest in the contents of the

file."  *CREW v. DOJ*, 978 F. Supp. 2d at 10.  The Court also recognized the "substantial" public

interest CREW was asserting in the decision by DOJ not to prosecute Sen. Ensign.  *Id.* at 12.  As

the Court noted, "here, DOJ exercised its discretion regarding a high ranking and high profile

elected official who resigned following accusations of significant public corruption, against a

backdrop of 'substantial credible evidence.'"  *Id.* at 13, quoting *Kimberlin v. U.S. Dep't of

Justice*, 139 F.3d 944, 949  (D.C. Cir. 1998).  Further, "the topic of how DOJ has handled

investigations and exercised its discretion with respect to members of Congress has received

widespread media attention."  *CREW v. DOJ*, 978 F. Supp. 2d at 13.

The Court concluded that given the "substantial public interest" in disclosure,

"[a]pplication of DOJ's categorical rule is . . . not appropriate."  *Id.* at 14.  Refusing to make "a

blanket determination" as to whether the privacy interests outweigh the public interest, the Court

recognized the interests "may vary" depending on the context and the nature of the information.

*Id.*.

Based on these findings, the Court ordered DOJ to produce a *Vaughn* index within 60 days. *Id.* at 15. As the Court reasoned, "submission of a <u>Vaughn</u> index here will not harm Senator Ensign's privacy interests in not being identified as the subject of an investigation – that ship has sailed." *Id.* (citation omitted).

On December 12, 2013, after receiving an extension of its time to submit the required *Vaughn* index, DOJ filed a motion to permit the agency to instead submit a *Vaughn* index of only a representative sampling of documents from CRM and EOUSA by April 15, 2014 – four months later and well beyond the initial 60 days ordered by the Court on August 23, 2013. (Dkt. 19) (D's Rep. Sample M.). According to DOJ, this approach was necessary "to bring the Court's evaluation of their withholdings within a manageable scope." D's Rep. Sample M. at 1. DOJ further requested that the FBI be given until June 30, 2014, to complete processing responsive documents, and until September 30, 2014, to submit a *Vaughn* index. *Id.*

CREW filed an opposition to this motion on January 15, 2014 (Dkt. 20) (P's Rep. Sample Opp.), arguing the government's request to carve out 99 percent of CRM and EOUSA documents from its processing responsibilities is neither reasonable nor factually supported. P's Rep. Sample Opp. at 2-3. As CREW pointed out, DOJ provided no declarations to support its claim concerning the volume of responsive material, its supposition that the documents were subject to Exemption 5, and its "vague, general time estimates[.]" *Id.* at 3. CREW argued further that sampling at this point is entirely premature given that DOJ has not even finished processing the documents. *Id.* at 5-6. CREW explained that sampling is used after an agency has processed the request in question; only then can a truly "representative" sampling be

selected.  *Id.* at 6.

On February 4, 2014, the Court issued a Memorandum Opinion and Order (Dkt. 21) (2d Mem. Op.) denying DOJ's motion, ordering DOJ to submit sworn declarations, and ordering the parties to file a status report after meeting and conferring.  The Court refused DOJ's request that it be permitted to file a *Vaughn* index based on a sample, concluding

> until DOJ processes responsive records, releases non-exempt records, and withholds documents in part or in full pursuant to FOIA exemptions, CREW and the Court cannot test its exemption claims through sampling or otherwise.

2d Mem. Op. at 5.  The Court further characterized DOJ's request as seeking "an advisory opinion on how the Court views its preliminary stances on withholdings," and declined to do so noting "DOJ has already elicited a lengthy opinion from this Court on whether it appropriately withheld documents under Exemptions 6 and 7(C)."  *Id.* at 6.  Accordingly, the Court ordered DOJ to submit sworn declarations from the FBI, CRM, and EOUSA providing seven categories of requested information, ranging from a summary of the DOJ components' processing efforts to date to the factual bases for their estimates underlying their proposed processing schedules.  *Id.* at 8.  The parties were directed to meet and confer on any narrowing of documents to be processed and report back to the Court by March 28, 2014.  *Id.* at 9.

E.     *DOJ's Disclosure of Records Responsive to CREW's Requests*

As a direct result of the Court's two opinions and orders, the FBI processed 11,903 pages of responsive material, of which 2,161 pages were withheld in full; 715 pages were released in part; and 1,519 pages were released in full.[8]  Further 1,295 pages were determined to be

---

[8] These numbers were provided in the Third Declaration of David M. Hardy that DOJ provided CREW pursuant to the Court's Order requiring each DOJ component at issue to produce a

duplicates, and 6,213 pages were referred to CRM for processing and a direct response to CREW.[9]

After a lengthy delay, EOUSA withheld 830 pages in full and produced to CREW 90 pages in part.[10]  EOUSA's *Vaughn* index, provided to CREW pursuant to the Court's Order, explains its rationale for withholding 894 pages of responsive documents in full.

CRM released to CREW 134 pages in full, 4,844 pages in part, and provided CREW a *Vaughn* index explaining the bases for withholding 1,672 pages in full.[11]

## ARGUMENT

## I.   CREW IS ENTITLED TO AN AWARD OF FEES AND COSTS

As noted, the parties agree CREW is a substantially prevailing party and therefore eligible for an award of fees and costs.  Once eligible for fees, a FOIA requester must demonstrate its entitlement to a fee award under a four-factor balancing test employed by the D.C. Circuit that considers: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested records.  *Tax Analysts v. U.S. Dep't*

---

*Vaughn* index explaining each of its withholdings.

[9] *Id.*

[10] The *Vaughn* index EOUSA provided CREW pursuant to the Court's order did not identify the number of documents produced in full or in part or the number of withheld documents, although it explains EOUSA's rationale for withholding 894 pages of responsive documents in full.  The numbers cited above were provided to CREW's counsel by defendant's counsel.  Of note, the number of documents EOUSA ultimately determined to be responsive is a far cry from the approximately 120,000 pages of responsive documents EOUSA initially claimed to have.  *See* Declaration of John W. Kornmeier (Dkt. 23-2), ¶ 45.

[11] CRM's *Vaughn* index did not identify the number of documents produced in full or in part or the number of withheld documents.  These numbers have been confirmed by DOJ's counsel.

*of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992); *see also Negley v. FBI*, 818 F. Supp. 2d 69,

73 (D.D.C. 2011).  As the D.C. Circuit has explained, "[e]ssentially, the first three factors assist

a court in distinguishing between requesters who seek documents for public informational

purposes and those who seek documents for private advantage."  *Davy v. CIA*, 550 F.3d 1155,

1160 (D.C. Cir. 2008).  Here, consideration of the relevant factors clearly supports awarding

CREW its attorney fees and costs.

### A.   The Public Derived a Significant Benefit From the Disclosure of the Requested Records.

In determining whether the "public benefit" factor weighs in favor of granting a fee

award, courts look to whether "the complainant's victory is likely to add to the fund of

information that citizens may use in making vital political choices."  *Cotton v. Heyman*, 63 F.3d

1115, 1120 (D.C. Cir. 1995), citing *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).  The

litigation victories CREW achieved here resulted in the release of thousands of pages of

documents that unquestionably benefit the public and satisfy this test.

Through this lawsuit, CREW obtained never-before released documents on a matter of

great public interest that shed light on DOJ's handling of a high-profile investigation of alleged

official misconduct involving an influential member of Congress.  As this Court already has

found in rejecting DOJ's initial reliance on a categorical exemption, the public interest in the

requested records is "substantial,"[12] especially given the subject of CREW's request – "a high

ranking and high profile elected official who resigned following accusations of significant public

---

[12] *CREW v. DOJ*, 978 F. Supp. 2d at 12.

corruption, against a backdrop of 'substantial credible evidence.'[13]  Further evidence of the

significant public interest is the "widespread media attention" paid to "how DOJ has handled

investigations and exercised its discretion with respect to members of Congress[.]"[14]

The extensive news coverage the newly disclosed documents received, including articles

in  the *New York Times*[15] and other national media,[16] as well as local media in Sen. Ensign's state

of Nevada,[17] confirm the accuracy of the Court's assessment of the public interest here.  Further,

CREW produced and published on its website an extensive report detailing what the documents

disclosed as a result of this litigation revealed about DOJ's handling of this public corruption

_____

[13] *Id.* at 13, quoting *Kimberlin*, 139 F.3d at 949.

[14]  *CREW v. DOJ*, 978 F. Supp. 2d at 12.

[15] Eric Lichtblau, <u>Documents Reveal Details of F.B.I. Inquiry Into Nevada Senator</u>, *New York Times*, December 29, 2014, *available at* <u>http://www.nytimes.com/2014/12/30/us/politics/ documents-reveal-details-of-fbi-investigation-into-disgraced-senator-john-ensign.html</u>.

[16] *See* Bill Theobald, <u>DOJ Docs Add Insight To Decision Not To Charge Ex-Senator</u>, *USA Today*, December 30, 2014, *available at* <u>http://www.usatoday.com/story/news/politics/ 2014/12/30/john-ensign-justice-department-investigation/21068577/</u>; David McCabe, <u>Ensign Investigation Back In The Spotlight</u>, *The Hill*, December 29, 2014, *available at* <u>http://thehill.com/blogs/blog-briefing-room/228222-ensign-investigation-back-in-the-spotlight</u>; Dylan Scott, <u>DOCS: Disgraced GOPer 'Brazen" In Affair With Aide's Wife</u>, *TPM*, December 30, 2014, *available at* <u>http://talkingpointsmemo.com/fivepoints/ensign-scandal-new-documents</u>.

[17] *See* Bill Theobald, <u>New Docs Shed Light On Why Feds Never Charged Ensign</u>, *Reno Gazette-Journal*, December 30, 2014, *available at* <u>http://www.rgj.com/story/news/2014/12/30/new-docs-light-feds-never-charged-ensign/21079105/</u>; Steve Sebelius, <u>Responsibility Goes Both Ways In Ensign Scandal</u>, *Las Vegas Review-Journal*, January 5, 2015, *available at* <u>http://www.review journal.com/columns-blogs/politics/slash-politics/responsibility-goes-both-ways-ensign-scandal</u>; Dana Gentry, <u>FBI Documents Show More Detail In Ensign Scandal</u>, *News 3 at Noon*, December 31, 2014, *available at* <u>http://www.mynews3.com/content/news/story/ensign-fbi-report-hampton-senate-scandal-dc/aOY1ilTHWEOy9isptVTgLg.cspx</u>; Eric Hartley, <u>Group: Prosecutors Had Enough Proof To Charge Ensign</u>, *Pahrump Valley Times*, March 31, 2014, *available at* <u>http://pvtimes.com/news/group-prosecutors-had-enough-proof-charge-ensign.html</u>.

investigation.[18]  Such demonstrated public interest weighs strongly in favor of an award of

attorneys' fees and costs.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d

225, 235 (D.D.C. 2012) (court awarded fees where documents illuminating "prosecutorial

decisionmaking" were disclosed, noting "the national media coverage garnered by this issue.");

*CREW v. Dep't of Justice*, No. 11-cv-00754 (GK) (D.D.C. Aug. 4, 2014) (in similar case seeking

documents from DOJ's closed investigation of Rep. Don Young,  court found public benefit

prong of eligibility test satisfied based on newspaper stories that included information from

disclosed documents and CREW's own report analyzing the documents).

>           **B.      CREW Derived No Commercial Benefit From the**
>                   **Disclosures It Obtained From this Lawsuit, and**
>                   **Instead Shares the Public Interest in their Contents.**

The "commercial benefit" and "plaintiff's interest" factors are closely related and

typically considered together.  *Tax Analysts*, 965 F.2d at 1095.  Here, CREW is a nonprofit

corporation organized under section 501(c)(3) of the Internal Revenue Code.  Complaint, ¶ 3.

CREW is committed to protecting the right of citizens to be informed about the activities of

government officials and to ensuring their integrity.  *Id.*  To advance its mission, CREW uses

research based in part on government records made available to it under the FOIA.  *Id.*  CREW

disseminates publically all documents it acquires from its FOIA requests, including those at issue

here, through it own website as well as another website on which CREW posts documents for

public review at no charge.[19]  CREW filed the FOIA requests at issue in this capacity.

---

[18] *Se*e The John Ensign Files: What CREW Has Learned About The John Ensign Investigation And Why He Was Never Prosecuted, *available at* http://www.citizensforethics.org/pages/what-crew-has-learned-about-the-john-ensign-investigation-nevada.

[19] *See* www.citizensforethics.org.

Further, CREW has no commercial interest in the requested documents.  As CREW explained in justifying its request for a fee waiver, CREW sought the documents at issue expressly for public dissemination on an issue of public importance.[20]  CREW has now disseminated the documents it acquired from these FOIA requests on its website and www.scribd.com at no charge, and published on its website a free report based on the information it gleaned from the released documents.  *See* n. 15 *supra*.  As an entity that "gathers information of potential interest to a segment of the public, uses [its] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience," CREW is "among those whom Congress intended to be favorably treated under FOIA's fee provisions."  *Davy*, 550 F.2d at 1161-62, quoting *Tax Analysts*, 965 F.2d at 1095-96.  *See also CREW v. U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011).

Awarding CREW its attorney fees here would advance the underlying purposes of the FOIA's fee provision:  "encourag[ing] Freedom of Information Act suits that benefit the public interest."  *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980).  *See also Davy*, 550 F.3d at 1160-61 ("a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, [unless] . . . his interest was of a frivolous or purely commercial nature." (quotation marks omitted) quoting *Fenster*, 617 F.2d at 742 n.4).  As an entirely non-commercial entity serving the public interest exclusively, CREW satisfies the second and third factors for a fee award.

> **C.    DOJ's "Categorical" Denial of CREW's FOIA Requests and Significant Delay in Processing Those Requests Lacked Reasonable Bases in Law.**

---

[20] *See* Exhibit A to Hardy Decl., Exhibit A to Vanek Decl., Exhibit 1 to Cunningham Decl.

The fourth entitlement factor "considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy*, 550 F.2d at 1162 (citations omitted).  "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id.* at 1163. When measured against this standard, both DOJ's initial position as well as its position after the Court ordered it to produce *Vaughn* indices within 60 days were unreasonable.

In the first decision that gives rise in part to CREW's fee request, this Court soundly rejected DOJ's claim that CREW had asserted no substantial public interest because of the "'highly personal nature'" of any alleged misconduct, thereby establishing unequivocally that DOJ had no reasonable basis in law for its categorical withholding approach.  As the Court concluded, "the public has a substantial interest in DOJ's decision not to prosecute him [Sen. Ensign], considering the circumstances." *CREW v. DOJ*, 978 F. Supp. 2d at 13 (citations omitted).  Those circumstances included the finding of the Senate Ethics Committee's special counsel "that there was substantial credible evidence that Senator Ensign committed several violations of federal law" and that committee's referral of the matter to DOJ. *Id.*  The Court reasoned, "if disclosure of the requested records in these circumstances would not serve the public interest of promoting the citizens' right to be informed about 'what their government is up to,' it is hard to imagine DOJ ever accepting any public interest other than misconduct." *Id.* at 12, quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 772-73 (1989).

14

Based on this finding, the Court rejected completely DOJ's policy, as applied here, of categorically withholding all requested documents.  The Court noted, "CREW is not challenging DOJ's categorical withholding policy on its face; it only challenges DOJ's application of the rule here.  For good reason."  *CREW v. DOJ*, 978 F. Supp. 2d at 14.  The Court concluded that given the "substantial public interest" CREW had articulated, DOJ's application of its categorical rule was "not appropriate."  *Id.*  In reaching these conclusions, the Court refused to accept DOJ's interpretation of its cited cases, relying instead on a wealth of authority pointing to the opposite conclusion.

Under comparable circumstances, U.S. District Court Judge Gladys Kessler concluded DOJ's reliance on its categorical withholding policy to refuse to release any documents concerning Rep. Don Young also lacked a reasonable basis in law and established CREW's entitlement to a fee award.  *CREW v. U.S. Dep't of Justice*, No. 11-cv-00754.  There, as here, "DOJ knew at the time of Plaintiff's request that the Congressman had already given up that privacy right."  *Id.* at 8.  Rep. Young, like Sen. Ensign, had issued a press release touting the fact that DOJ was not going to prosecute him.  *Id.*  And congressional actions also had highlighted the misconduct at issue.  In the case of Rep. Young, he had "discuss[ed] the subject on the floor of the House of Representatives," *id.*, while here a special counsel to the Senate Ethics Committee had issued publicly an extensive report detailing Sen. Ensign's misdeeds and referred the matter to DOJ for further investigation.

DOJ's lack of a "reasonable basis" for its "categorical" denial of CREW's FOIA requests on privacy grounds ultimately was affirmed when, after being compelled by the Court to submit a *Vaughn* index justifying the withholding of individual documents, the agency released

thousands of pages of responsive material in whole or in part.  These circumstances support the conclusion the agency had no reasonable, legitimate basis for "categorically" withholding the documents it ultimately released as a direct result of the Court's August 23, 2013 ruling.

DOJ's request to submit a *Vaughn* index of only a sampling of responsive documents prior to completing its processing of CREW's requests equally lacked a reasonable basis in law and was firmly rejected by the Court.  First, citing to CREW's opposition, the Court noted no court has ever "permitted an agency to provide a representative <u>Vaughn</u> index <u>before</u> processing all responsive documents," as DOJ requested here.  2d Mem. Op. at 5 (emphasis in original). The Court explained,

> until DOJ processes responsive records, releases non-exempt
> records, and withholds documents in part or in full pursuant to
> FOIA exceptions, CREW and the Court cannot test its exemption
> claims through sampling or otherwise.

*Id.*  To otherwise proceed in the completely unprecedented manner DOJ was urging put "the cart before the horse."  *Id.* at 6.

Second, DOJ attempted to justify its unprecedented request on the need to secure what the Court termed "an advisory opinion on how the Court views its preliminary stances on withholding so that it can code, withhold, and redact accordingly."  2d Mem. Op. at 6.  But the exemption for which DOJ claimed especially to need guidance – Exemption 5 – presented "troubling" issues given that "[n]one of the agencies involved asserted Exemption 5 at the administrative level, and the Court has already cast serious doubt on DOJ's claims under Exemptions 6 and 7(C)."  *Id.*  Moreover, as the Court noted, it "has already elaborated its views on the arguments underlying the agencies' intended withholdings," and the Court accordingly advised DOJ "the agencies would be well advised to heed those views."  *Id.* at 7.

Given the Court's complete rejection of DOJ's novel request and the tenor of its ruling there can be no question DOJ's motion to submit a representative sample *Vaughn* index prior to completing its processing of CREW's requests lacked any reasonable basis in law.  Accordingly, CREW is entitled to a fee award here for the work performed successfully litigating both of these motions.

## II.     THE REQUESTED FEE AWARD IS REASONABLE

After determining a plaintiff's eligibility and entitlement to attorney fees, the court must determine "the proper amount of the fee award."  *Summers v. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007).  Fee awards are calculated employing the "usual method of multiply[ing] the hours reasonably expended in the litigation by a reasonable hourly fee, producing the lodestar amount."  *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008) (internal quotation and citation omitted).

### A.     The Court Should Apply the Updated *Laffey* Matrix to Determine the Prevailing Market Rates for Legal Services.

Plaintiff's attorneys, as public interest lawyers, do not have customary hourly billing rates.[21]  In *Blum v. Stenson*, 465 U.S. 886, 896 (1984), the Supreme Court held that public interest attorneys may be awarded fees according to the prevailing market rates in the community.  *See also Act Now to Stop War & End Racism Coal. v. District of Columbia*, 286 F.R.D. 145, 149 (D.D.C. 2012) ("The appropriate hourly rate for public interest legal service organizations and for-profit firms engaged in public interest work is the prevailing market rate"), quoting *Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 170 (D.D.C. 2005)).

---

[21] Declaration of Anne L. Weismann (Weismann Decl.) (Exhibit A).

To ascertain appropriate market rates in this jurisdiction, "use of the broad *Laffey* matrix may be by default the most accurate evidence of a reasonable hourly rate." *Northwest Coal. for Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123, 129 (D.D.C. 2006).[22] "Attorneys who do not charge a billing rate, such as those employed with non-profit or public interest groups, may be compensated at the hourly" market rate reflected in the *Laffey* matrix. *Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 179 (D.D.C. 2001); *see also Judicial Watch v. U.S. Dep't of Justice*, 774 F. Spp. 2d 225, 232 (D.D.C. 2011) ("For public-interest . . . lawyers who do not have customary billing rates, courts in this circuit have frequently employed the '*Laffey* Matrix.'").

Since at least 2000, courts in this district have approved the use of a version of the *Laffey* matrix updated through the application of the legal services component (LSI) of the Consumer Price Index (CPI) to bring rates from earlier years in line with current economic realities. *See, e.g.*, *CREW v. Dep't of Justice*, No. 11-cv-00754; *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 11-15 (D.D.C. 2000) (*Salazar I*). While the U.S. Attorney's Office for the District of Columbia maintains its own version of the fee matrix that does not rely on the legal services component of the CPI, using the legal services component "has the distinct advantage of capturing the more relevant data[.]" *Salazar v. District of Columbia*, 750 F. Spp. 2d 70, 73 (D.D.C. 2011) (*Salazar II*) (quotation omitted). *See also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) ("The Court concludes that the use of the updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of Appeals, as well as from this Court in *Salazar [I]*."); *Interfaith Cmty. Org. v. Honeywell Int'l., Inc.*, 726 F.3d 403,

---

[22] "The *Laffey* matrix is 'a schedule of charges based on [particular attorneys'] years of experience' developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983)." *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d at 175.

414-16 (3d Cir. 2013) (affirming district court's "use of the LSI-updated *Laffey* Matrix to determine the prevailing rates in the Washington, D.C. market.").

Recently, in *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), District Court Judge Beryl A. Howell conducted a lengthy and detailed analysis of the appropriate methodology for determining "prevailing market rates" for attorney fee awards.  After surveying relevant data from a variety of sources, and considering some judicial critiques of the LSI component of the CPI as a means of determining market rates, Judge Howell concluded, "the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide" than the matrix maintained by the U.S. Attorney's Office.  *Id.* at 154 (emphasis in original).  Based on this, the court held that  "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area."  *Id.* at 156.

Here, CREW relies on a recently updated *Laffey* matrix calculated by Dr. Michael Kavanaugh, the expert economist whose analytical method the Court adopted in *Salazar I* and *II*, *Eley*, and *CREW v. DOJ*.  *See, e.g.*, *Salazar II*, 750 F. Supp. 2d at 73 ("Dr. Kavanaugh's explanation makes good sense"); *Eley*, 999 F. Supp. 2d at 150.  As Dr. Kavanaugh explains in his declaration filed in *CREW v. DOJ*,[23] his current calculations of prevailing market rates for legal services in the Washington, D.C. area are based on the same methodology he employed, and the Court adopted, in *Salazar I*.  Declaration of Michael Kavanaugh (Kavanaugh Decl.), ¶ 12.  Based on that methodology, the prevailing market rates for work performed by attorneys

---

[23] This declaration is attached as Exhibit B.

with more than 20 years of experience (like Ms. Weismann and Ms. Sloan) are $753 per hour for

work performed between June 2012 and May 2013; $771 per hour for work performed between

June 2013 and May 2014; and $789 per hour for work performed between June 2014 and May

2015.[24]  Notably, these rates are consistent with the findings of a survey conducted by the

*National Law Journal* in 2012, which reported on rates for partners in four large Washington,

D.C. law firms, with "high" reported rates ranging from $1,250 to $985 per hour, and "median"

rates ranging from $750 to $560 per hour.  *National Law Journal*, "A Nationwide Sampling of

Law Firm Billing Rates" (filed herewith as Exhibit D).[25]

### B. The Legal Work for Which CREW Seeks Compensation Is Well-Documented and the Time Is Reasonable.

While a fee applicant "has the burden of establishing the reasonableness of its fee

request," that burden is met when supporting documentation is "of sufficient detail and probative

value to enable the court to determine with a high degree of certainty that such hours were

actually and reasonably expended."  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C.

Cir. 2004) (citations and internal quotation marks omitted).  *See also American Petroleum Inst.

v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) ("petitioner must submit 'sufficiently detailed

information about the hours logged and the work done'") (citation omitted).  "[T]he ultimate

inquiry is whether the total time claimed is reasonable," and toward that end a claimant is

---

[24] Exhibit C is the *Laffey* matrix endorsed by Dr. Kavanaugh with rates through May 31, 2015.

[25] In *Salazar I*, the Court considered several such surveys, including one conducted by the *National Law Journal* in 1998, and concluded their results were "generally consistent with and corroborative of the rates" calculated by Dr. Kavanaugh and adopted by the Court.  123 F. Supp.2d at 14.

required to provide "sufficient detail . . . so that [the court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith*, 466 F. Supp. 2d at 158.

Here, CREW is submitting in support of its fee request declarations detailing the number of hours counsel devoted to discrete tasks performed at specific stages of the litigation. These itemizations are based on daily time sheets and contemporaneous notes,[26] and provide more than adequate information from which both DOJ and this Court can assess their reasonableness. Further, CREW's attorneys have exercised considerable billing judgment with respect to the matters for which they seek compensation. Weismann Decl. at ¶ 6; Sloan Decl. at ¶ 5. Far from the kind of "generic entries" the D.C. Circuit has admonished fee applicants to avoid, *Role Models*, 353 F.3d at 971 (referring to entries labeled simply as for "research" and "writing"), this documentation clearly enables this Court to "evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those task," which is the task before it. *Smith*, 466 F. Supp. 2d at 158.

Ms. Weismann, lead counsel for plaintiff in this matter, has been an active member of the bar and has practiced law since November 1979. Weismann Decl. at ¶ 2. She has extensive experience litigating FOIA cases in the federal courts and has been recognized as a leading expert in the field. *Id.* at 3. Currently Ms. Weismann serves on a FOIA Advisory Committee established by the National Archives and Records Administration. *Id.* As an attorney with over 30 years of experience, she is entitled to compensation at an hourly rate of $753 for work

---

[26] Weismann Decl. at ¶ 4; Declaration of Melanie Sloan (Sloan Decl.) at ¶ 4 (attached as Exhibit E).

performed between June 2012 and May 2013, an hourly rate of $771 for work performed

between June 2013 and May 2014, and an hourly rate of $789 for work performed between June

2014 and the present.  *See* Kavanaugh Decl., ¶ 24.

Ms. Sloan served as CREW's Executive Director from February 2003 to January 2015.

Sloan Decl. at ¶ 1.  In that capacity, she also acted as co-counsel in cases CREW brings,

reviewing all written pleadings filed with the court and consulting on strategy and legal

positions.  *Id.* at ¶ 3.   She has been an active member of the bar and has practiced law since

December 1991.  *Id.* at ¶ 2.  As an attorney with over 20 years of experience, she also is entitled

to compensation at the same hourly rates as Ms. Weismann.  Kavanaugh Decl., ¶ 24.

Applying those rates to the hours detailed in the declarations of counsel, CREW is

entitled to an award of attorneys' fees for the merits work performed to date based upon a

lodestar amount of $41,095.20 as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Anne L. Weismann | 38.5 | $753 | $28,990.50 |
|  | 9.45 | $771 | $ 7,285.95 |
|  | 2 | $789 | $ 1,578.00 |
| Melanie Sloan | 2 | $753 | $ 1,506.00 |
|  | 2.25 | $771 | $ 1,734.75 |
| **Total Lodestar – Merits** |  |  | **$41,095.20** |

In addition, CREW seeks compensation for time devoted to the preparation of this

motion, as documented in Exhibit 1 to the Weismann Decl. and Exhibit 1 to the Sloan Decl. in

the amount of $12,220.50 as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Anne L. Weismann | 15.25 | $789 | $12,023.25 |

| | | | |
|---|---|---|---|
| Melanie Sloan | .25 | $789 | $   197.25 |
| **Total Lodestar – Fees** | | | **$12,220.50** |

As detailed above, CREW seeks a total award of attorneys' fees in the amount of $53,315.70 for time reasonably expended by counsel in litigating the merits of this case and in the preparation of this motion.[27]  In addition, CREW seeks reimbursement of costs reasonably incurred in the amount of $550 for the filing fee CREW paid to the Court upon the initiation of this action and the cost of serving process, as attested to in the Weismann Decl. and set forth in Exhibit 1 to the Weismann Decl.

### Conclusion

For the foregoing reasons, the Court should grant this motion.

Respectfully submitted,

  */s/ Anne L. Weismann*
ANNE L. WEISMANN, D.C. Bar No. 298190
MELANIE SLOAN, D.C. Bar No. 434584
Citizens for Responsibility and
  Ethics in Washington
455 Massachusetts Avenue, N.W., Floor 6
Washington, D.C. 20001
(202) 408-5565
Aweismann@citizensforethics.org

April 1, 2015                          Counsel for Plaintiff

---

[27]  CREW intends to supplement its request for attorneys' fees to account for additional time spent in the preparation of its reply in support of this motion.