**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 12-1491 (JDB) |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks an award

of attorneys' fees and costs under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552(a)(4)(E)(ii), based upon its success in obtaining disclosure of material initially withheld by

defendant Department of Justice ("DOJ") concerning its investigation of former Senator John

Ensign.  The agency opposes plaintiff's fee motion, arguing that CREW is not entitled to an

award of fees, and that CREW has failed to demonstrate that the time claimed, and the hourly

rates requested, are reasonable. CREW addresses those contentions in turn.

## I.   CREW IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

As we explained in our opening brief, CREW is "entitled" to attorneys' fees and costs

incurred in this litigation.[1]  The four factors relevant to fee entitlement – (1) the public benefit

derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's

---

[1]  DOJ concedes that CREW "substantially prevailed" in this case and is thus *eligible* for an
award of attorneys' fee and costs, Defendant's Opposition to Plaintiff's Motion for an Award of
Attorneys' Fees and Costs ("Def. Fee Opp.") at 3, n.1, but asserts that CREW is not *entitled* to an
award.

interest in the records; and (4) whether the government had a reasonable basis for withholding the requested information – all weigh heavily in CREW's favor.  Plaintiff's Motion for an Award of Attorneys' Fees and Costs ("CREW Fee Mot.") at 9-10, citing *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992).  DOJ does not dispute (or even address) our assertion that factors (1), (2) and (3) favor CREW.  *See* Def. Fee Opp. at 3-7.  The agency bases its opposition solely on the fourth factor, asserting that it had a "reasonable basis" for withholding the requested information.

In support of its argument, DOJ asserts that its "categorical withholding [of *all* responsive records] in response to CREW's FOIA request had a reasonable basis in law, notwithstanding the Court's summary judgment ruling in CREW's favor." *Id*. at 4.  This is true, according to the agency, because "the Court expressly agreed with many of the premises of the [DOJ's] position." *Id*.  DOJ proceeds to reiterate a series of undisputed factors the Court took into account in reaching its decision (*e.g.*, categorical exemption claims "are sometimes permitted;" Sen. Ensign "retains a cognizable privacy interest in the *contents* of the file." *Id*. at 4-5) (citations omitted; emphasis added).  Attempting to downplay the significance of the Court's actual holding, the agency says, "[u]ltimately, the propriety of categorical withholding in this case came down to a balancing between privacy interests and public interest." *Id*. at 6 (citation omitted).

Balancing the relevant interests, of course, is the crux of litigation involving the FOIA privacy exemptions.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1988).  As such, the Court's finding that the balance weighed heavily on the public interest side was not, as DOJ suggests, a trifling matter.  The Court found that "submission of a *Vaughn* Index here will not harm Senator Ensign's privacy interests in not being identified as the subject of an investigation – that ship has sailed." *Citizens for*

*Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 978 F. Supp. 2d 1, 14-15 (D.D.C. 2013).  On the other hand, "CREW has articulated a substantial public interest." *Id*. at 14.  The Court thus rejected the arguments advanced by DOJ on both sides of the scale.

Attempting to bolster the unsuccessful position it advanced in this case, DOJ asserts that it "faced a balancing of interests, and reasonably interpreted precedents to reach a reasonable position." Def. Fee Opp. at 6 (citation omitted).  In reality, the agency willfully ignored two highly relevant rulings this Court had recently issued in two cases litigated by CREW and DOJ involving criminal investigations of members of Congress.  In *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226 (D.D.C. 2012) ("*CREW–Young*"), the Court rejected the agency's attempt to categorically withhold all records concerning its investigation of Rep. Don Young, after he had publicly disclosed that he had been the subject of an investigation.  In *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F. Supp. 2d 63 (D.D.C. 2012) ("*CREW–Lewis*"), the Court similarly rejected DOJ's categorical privacy claim concerning an investigation of Rep. Jerry Lewis that both DOJ and the Congressman publicly acknowledged.[2]

Indeed, the Court noted the similarity of the circumstances in those cases to those present in this case and cited the earlier decisions in rejecting DOJ's privacy argument:

> [A]s CREW points out, Senator Ensign has publicly disclosed the fact that he was the target of a criminal investigation.  Senator Ensign's privacy interest in a fact already known to the public is substantially diminished; all the more so because he was the person responsible for disclosing it.  *CREW v. U.S. Dep't of Justice*, 846 F. Supp. 2d 63, 72 (D.D.C. 2012) [*CREW–Lewis*] (where subject publicly acknowledged fact of investigation, privacy interest in that fact is substantially diminished); [*CREW–Young*], 840 F. Supp. 2d at 234 (same).

978 F. Supp. 2d 1, 10 (other citation omitted).

---

[2]  *CREW–Young* and *CREW–Lewis* were decided on January 10, 2012, and March 2, 2012, respectively.  This case was filed on September 10, 2012.

Likewise, notwithstanding the Court's unequivocal determination in the two earlier cases that there is a substantial public interest in examining DOJ's handling of ethics investigations involving members of Congress, the agency argued in this case that "the public interest in disclosure of information concerning [DOJ]'s investigation of former Senator Ensign is far from 'significant.'"  Defendant's Memorandum in Support for its Motion for Summary Judgment (Dkt. No. 8-1) at 17.  Again, the Court rejected that argument and cited its previous decisions:

> In a very similar case, a court in this District found a substantial public interest where Congress passed a specific piece of legislation directing DOJ to investigate a member of the House of Representatives accused of misconduct.  *See* [*CREW–Young*], 840 F. Supp. 2d at 234.  Here, although Congress did not pass any legislation regarding Senator Ensign's misconduct, the Senate Ethics Committee specifically referred the special counsel's findings and recommendations to the DOJ for investigation.  Put differently, the allegations against Senator Ensign have risen above the level of finger-pointing—indeed, Senator Ensign purportedly resigned under threat of expulsion from the Senate.  Finding a strong public interest would hardly require "DOJ to search for responsive records at the first hint of congressional impropriety in the media."  Def.'s Mot. 20.  As in [*CREW–Young*], the public's interest here in disclosure of information regarding DOJ's investigation of a member of Congress accused of illegal conduct is "very strong"—and quite specific.  840 F. Supp. 2d at 234 . . . .

978 F. Supp. 2d at 13 (other citation omitted); *see also id*. ("the public has a clear interest in knowing why 'the government agency responsible for investigating and, if warranted, prosecuting (members of Congress) for alleged illegal conduct' decided not to prosecute"), citing *CREW–Young* and *CREW–Lewis*.  The Court rejected DOJ's suggestion that the public interest was minimal, and characterized the agency's position as "somewhat puzzling."  *Id*. at 12, n.4.

It is clear that DOJ's decision to categorically withhold all records responsive to CREW's request lacked a reasonable basis.  But even if the Court could somehow find that the agency's position *was* reasonable, CREW would still be entitled to an award of fees based upon its uncontested satisfaction of the other three relevant factors that go into an assessment of entitlement.  Oddly, DOJ cites *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S.*

*Customs & Border Prot.*, 2006 U.S. Dist. LEXIS 77935 (D.D.C. Oct. 26, 2006), in support of its

position. Def. Fee Opp. at 3-4. In that case, the Court denied plaintiff's fee request after

concluding that the agency's legal position was "reasonable and largely correct." But the other

three factors also weighed against an award:

> Given th[e] modest amount of court-ordered relief, the minimal public benefit
> conferred by the released information, plaintiff's overriding commercial and
> professional interest in the materials, and Customs' reasonable and largely correct
> legal position, the Court concludes that an award of attorney's fees is
> inappropriate in this case.

2006 U.S. Dist. LEXIS 77935, *34 (footnote omitted).

Indeed, in awarding CREW fees and costs based upon its success in *CREW–Lewis*, the

Court found that it "need not parse the reasonableness of DOJ's nondisclosures . . . because even

if Justice did prevail on this one factor, CREW's success on the first three would still tip the

balance in favor of awarding fees." *CREW v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182097,

*11 (D.D.C. Oct. 24, 2014). The Court noted that "[t]he only time when the fourth factor would

control is 'when the agency has demonstrated that it had a lawful right to withhold disclosure.'"

*Id*. at *11-*12, quoting *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (other citations

omitted). The same result is appropriate here.[3]

---

[3] The Court also awarded CREW its fees and costs for work performed in achieving success in
*CREW–Young*. *CREW v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182098, *12 (D.D.C. Aug. 4,
2014) ("[T]he Court concludes that the decisions made by the Government to withhold the
requested documents were not reasonable. Therefore, [CREW] is 'entitled' to a fee award.").

## II.    THE LEGAL WORK FOR WHICH CREW SEEKS COMPENSATION IS WELL-DOCUMENTED AND THE TIME IS REASONABLE

DOJ next argues that the number of attorney hours for which CREW seeks compensation is not reasonable, raising a litany of objections based primarily upon CREW's purported failure to accurately account for the time expended on the case.  As DOJ recognizes, Def. Fee Opp. at 8, the D.C. Circuit provided guidance concerning adequate documentation of attorney time in *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C. Cir. 1982) ("*Concerned Veterans*").  CREW submits that application of the standards set forth in that opinion clearly establishes the adequacy of the documentation provided here.

In *Concerned Veterans*, 675 F.2d at 1327, the court of appeals made clear that "the fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney,'" quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*).  Rather, "the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified," and to that end, "[t]he better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought."  675 F.2d at 1327.  Illustrative of the level of detail required to support a fee request, the court described one of the submissions at issue in *Concerned Veterans*:

> With respect to hours claimed, each lawyer for whom fees were sought filed a detailed affidavit listing specific activities (*e.g.*, "Research and drafting of FOIA part of complaint; Court appearance on plaintiffs' motion for a preliminary injunction") and the number of hours expended on each.  In addition, the affidavit of one counsel indicated that 24 hours claimed for work by a paralegal was spent on researching and assisting in the drafting of a motion for a preliminary injunction. *These submissions were entirely adequate* to permit the District Court to determine whether fees should be awarded for all of the hours claimed . . . .

*Id*. at 1332 (emphasis added; footnotes omitted).

Similarly, in *Jordan v. Dep't of Justice*, 691 F.2d 514 (D.C. Cir. 1982), the court of

appeals held that

> [t]o enable opposing counsel adequately to assess the merits of the motion, and
> the court to fulfill its obligations, no more is necessary than "fairly definite
> information as to the hours devoted to various general activities, *e.g.*, pretrial
> discovery, settlement negotiation, and the hours spent by various classes of
> attorneys, *e.g.*, senior partners, junior partners, [and] associates. . . ."

*Id*. at 520, quoting *Copeland*, 641 F.2d at 891.[4]  *See also Bebchick v. Washington Metropolitan*

*Area Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986) ("a listing of hours for each

significant activity undertaken . . . is in accord with our directive in *Copeland*").  When

measured against this Circuit's requirement of providing "detailed summaries . . . indicating the

work performed by each attorney," *Concerned Veterans*, 675 F.2d at 1327, it is clear that

CREW's supporting documentation is wholly adequate to establish the reasonableness of its fee

request.  The declarations of the two attorneys who performed work in the case specify their

hours devoted to numerous distinct activities, *e.g.*, drafting the complaint; researching, drafting

and preparing memoranda relating to the parties' dispositive motions; reviewing the agency's

*Vaughn* submission to assess compliance with the Court's decision; etc.

---

[4] In *Copeland*, the D.C. Circuit, sitting *en banc*, noted that the Third Circuit's opinion in *Lindy
Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp*., 487 F.2d 161 (3d Cir.
1973), provided the "framework for use in this circuit."  641 F.2d at 891.  In *Lindy*, the court
noted that "the only information furnished to the district judge regarding the time spent by [fee
petitioners] was that they had spent 'in excess of 6,000 hours in connection with this litigation.'
This information was insufficient to support the award of fees . . . ." 487 F.2d at 167 (citation
omitted).  It was this complete lack of specificity that led the Third Circuit to require "some
fairly definite information as to the hours devoted to various general activities," *id*., a
requirement that was adopted by the D.C. Circuit.

The adequacy of CREW's submission is apparent when the ultimate objective of this Circuit's documentation requirement is considered.  The court of appeals has explained that a fee applicant must provide "sufficiently detailed information about the hours logged and the work done" because such information is "essential not only to permit the District Court to make an accurate and equitable award but *to place government counsel in a position to make an informed determination as to the merits of the application*."  *Concerned Veterans*, 675 F.2d at 1327 (emphasis added).  Here, DOJ's opposition amply demonstrates that opposing counsel possesses enough detailed information to assess the merits of CREW's request; indeed, the agency highlights specific time entries that it asserts do not merit compensation.  *See, e.g.*, Def. Fee Opp. at 18-19 (based upon the work identified in her time entries, Melanie Sloan's work was "duplicative" and should not be compensated); *id*. at 20 ("two hours for reviewing *Vaughn* indices on July 16, 2014" should not be compensated).  Despite its lengthy complaints about the adequacy of CREW documentation, the agency is clearly able to understand in detail the nature and amount of work for which compensation is requested.

In *American Petroleum Inst. v. Environmental Protection Agency*, 72 F.3d 907, 916 (D.C. Cir. 1996), the D.C. Circuit noted that "[d]eciding what is a reasonable amount of time to spend on motions is an imprecise undertaking . . . and [a court's] calculations will necessarily be rough."  But "[b]ased on the motions filed and [the court's] familiarity with the issues of the case," the reasonableness of time devoted to particular tasks can be assessed.  In that case, the fee petitioners sought compensation for approximately 550 hours of time devoted to the preparation of three motions, two of which were twenty pages long and the third "was somewhat shorter."  *Id*. at 915.  The court of appeals concluded that compensation was appropriate for "seventy-five

percent of the hours spent on [the] motions" (or approximately seven hours of work for each page of the briefing at issue).  *Id.* at 916.

Here, CREW seeks, *inter alia*, compensation for 26 hours of time devoted to the preparation of it opening summary judgment brief (Dkt. No. 10), which was 28 pages long, and 8.75 hours for its reply brief (Dkt. No. 14), which was 18 pages long.  CREW submits that the documentation it has submitted is clearly adequate in the absence of any reasonable suggestion that the modest number of hours claimed is excessive, and that "[b]ased on the motions filed and [the court's] familiarity with the issues of the case," 72 F.3d at 916, the Court can readily assess the reasonableness of the time devoted to particular tasks identified by counsel.

As Judge Tamm observed in *Concerned Veterans*, a fee applicant meets its burden once it submits "sufficiently detailed supporting documentation" of the kind that CREW has submitted here (and which is analogous to that approved by the D.C. Circuit in that case).

> The burden of proceeding then shifts to the party opposing the fee award, who *must submit facts and detailed affidavits to show why the applicant's request should be reduced or denied.*  Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application.  *It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive . . . .*

675 F.2d at 1337-1338 (Tamm, J., concurring) (emphasis added).  In its opposition, DOJ has submitted no "facts [or] detailed affidavits" to support its assertion that the attorney hours detailed by CREW are unreasonable.  Def. Fee Opp. at 8.  The agency has not, for instance, submitted declarations detailing the number of hours that government counsel devoted to the specific tasks identified by CREW.  *See*, *e.g.*, *Sierra Club v. Environmental Protection Agency*, 769 F.2d 796, 807 (D.C. Cir. 1985) ("The government notes that it spent a total of about 400 hours on the merits of the case.  The petitioners, in contrast, request compensation for 800 hours.");  *Lake Pilots Ass'n v. United States Coast Guard*, 310 F. Supp. 2d 333, 341 (D.D.C.

2004) (agency argued that the pleadings could "easily have been completed in 50 hours – an amount in excess of the time the Coast Guard's attorneys spent on the motion practice").

The agency's objection is largely based upon its assertion that CREW is relying upon documentation derived from timekeeping practices that have previously been criticized by the Court.  Def. Fee Opp. at 9-10.  That assertion is simply incorrect.  While the Court found fault with some of counsel's practices in the past, recent decisions awarding CREW attorneys' fees have recognized that counsel for CREW heeded the Court's earlier guidance and has adequately documented its fee requests.  In *CREW v. FEC*, Civil Action No. 11-951 (CKK), 2014 U.S. Dist. LEXIS 123727 (D.D.C. Sept. 5, 2014), the Court rejected arguments similar to those the agency makes here.  The Court concluded that the decision in *CREW v. DHS*, Civ. Action No. 08-1046 (JDB),  2010 U.S. Dist. LEXIS 143571 (D.D.C. Apr. 21, 2010), which DOJ cites here, Def. Fee Opp. at 9, flowed from critically different declarations offered by CREW's attorneys in support of their fee petition.  Those declarations "did not itemize the specific tasks performed," and the Court characterized Ms. Weismann's declaration as based, in part, on her review of "the hours spent on the case in coordination with the docket sheet, case files, and periodic notes of daily activities maintained on her calendar."  *Id*. at *30-*31.  A further distinction was that in *CREW v. DHS*, "CREW provided no specific dates and grouped multiple entries together." *Id*. at *33.  By contrast, the declaration submitted in *CREW v. FEC* – like the declarations submitted in this case – "includes one activity completed on one specific date." *Id*.  *See also CREW v. DOJ*, 2014 U.S. Dist. LEXIS 182098, *12 (D.D.C. Aug. 4, 2014) (finding documents CREW submitted in

support of its fee petition, which were similar to those presented here, were "sufficiently detailed and clear to overcome Defendant's argument that they were inadequate.").[5]

Citing one of the earlier fee decisions involving CREW, DOJ next argues that CREW has failed to "heed the Court's guidance in 2011 to 'bill in ten-minute or six-minute increments.'" Def. Fee Opp. at 10, quoting *CREW v. DOJ*, 825 F. Supp. at 230. The agency makes this assumption "[j]udging by the . . . billing summaries that CREW submitted" and notes, correctly, that "CREW does not state what billing increments were used." Def. Fee Opp. at 10-11. To remove any uncertainty on the issue, CREW submits herewith the supplemental declaration of Ms. Weismann, in which she clarifies that her practice was "was to round down to the nearest 15-minute increment," and that "where [she] expended less than 15 minutes on a task, [she] did not include that time in the hours" recorded. Supplemental Declaration of Anne L. Weismann (filed herewith as Exhibit A) ¶ 3.

The agency also asserts that CREW has not adequately described the work performed for which compensation is sought, faulting specifically dated entries such as "Draft SJ Opposition." Def. Fee Opp. at 10-11. Again, DOJ seeks to rely upon the Court's 2010 decision in *CREW v. DHS*, where the work claimed was grouped into combined entries for various stages of the litigation and no specific dates were provided. In *CREW v. FEC*, the Court distinguished CREW's earlier practice, which was criticized in the *DHS* case, from the practice employed in

---

[5] The agency's citation of *CREW v. DOJ*, 825 F. Supp. 2d 226, 230 (D.D.C. 2011), Def. Fee Opp. at 9-10, is misplaced. There, the Court faulted CREW's reliance upon "reconstructed timesheets," and DOJ does not allege, or even suggest, that CREW's time records in this case are "reconstructed." Likewise, in *CREW v. DOJ*, 2014 U.S. Dist. LEXIS 182097, *19-*20 (D.D.C. Oct. 24, 2014), Def. Fee Opp. at 10, counsel "calculate[d] her time based on a *post-hoc* 'review' of 'daily time sheets and separate notes,'" for "work she completed . . . before the Court issued [its earlier] admonition." The documentation relied upon here, like that submitted in *CREW v. FEC*, does not suffer from the infirmities identified in the earlier cases.

the *FEC* case and here.  The Court noted that the Magistrate "reviewed . . . the timesheets

submitted and found in [*CREW v. DHS*], CREW provided no specific dates and grouped multiple

entries together."  2014 U.S. Dist. LEXIS 123727 at *32.  In contrast, in the *FEC* case, "the

majority of CREW's entries [were] for research and drafting of specific documents, much more

akin to an entry like 'legal research: Opposition' . . . that the court found" sufficient in earlier

cases.  *Id*. at *42, quoting *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 66-67 (D.D.C. 2013) (other

citations omitted).  The Court endorsed the Magistrate's conclusion that "it is evident from the

context of the fee petition that an entry such as 'Research and draft brief' is appropriate.'" *Id*.

(citation and internal quotation marks omitted).  Likewise here, both the "context" and the

modest number of hours claimed make it evident that the descriptions provided are adequate.[6]

Finally, despite its assertion that the documentation CREW has submitted lacks sufficient

detail, DOJ pinpoints particular work, and the corresponding number of hours, that it argues

should not be included in a fee award.  The agency devotes almost three pages of its opposition

to an argument that 4.5 hours of time claimed by CREW's co-counsel Melanie Sloan should not

be included in the fee calculation.  Def. Fee Opp. at 17-20.  The agency asserts that the brief time

Ms. Sloan spent reviewing pleadings and attending a status conference were somehow

"duplicative" and that the involvement of more than one attorney in the case was not necessary.

As noted, DOJ has not submitted declarations detailing the number of hours that *government*

---

[6]  The agency also asserts that there are "discrepancies" in the time records submitted by CREW.
Def. Fee Opp. at 14-16.  The "discrepancies" – to which DOJ devotes more than two pages of its
opposition – appear to have resulted from computation errors and amount to approximately 45
minutes of time.  For instance, CREW's computerized time sheet for work performed on
December 12, 2013, lists four time entries: 1.08; 0.41; 0.15; and 1.03.  While the numbers to the
right of the decimal points are actually hundredths of hours, they were apparently mistakenly
added together as minutes.  While Ms. Weismann's "breakdown of hours" in her declaration
reports 3 hours of time for that date, the correct figure is 2.67 hours.  As such, CREW reduces
the amount of compensation requested by $771, to reflect one less hour.  *See* n.14, *infra*.

*counsel* devoted to the specific tasks identified by CREW, *see, e.g., Sierra Club*, 769 F.2d at

807;  *Lake Pilots*, 310 F. Supp. 2d at 341, and counsel further notes that it is common practice

for DOJ attorneys to submit their draft pleadings to supervising attorneys for review, and for

more than one DOJ attorney to appear before the Court at hearings.

Finally, the agency objects to the inclusion of two hours of time in CREW's fee request

for counsel's review of DOJ's *Vaughn* indices.  Def. Fee Opp. at 20-21.  This modest amount of

work was clearly necessary in order to determine the degree to which DOJ had complied with the

Court's order concerning preparation of *Vaughn* indices and whether it would be necessary to

challenge the agency's compliance.  The Court has held, "it would seem critical to the

prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and

proper withholding during the course of its FOIA litigation."  *Elec. Privacy Info. Ctr. v. U.S.*

*Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 239-40 (D.D.C. 2011).  As the Court noted in its

resolution of the parties' dispute concerning the preparation of the indices, "until DOJ processes

responsive records, releases non-exempt records, and withholds documents in part or in full

pursuant to FOIA exemptions, CREW and the Court cannot test its exemption claims through

sampling or otherwise."  Memorandum Opinion and Order (Dkt. 21) at 5.  CREW submits that

its efforts to ensure compliance with the Court's directive concerning the preparation of *Vaughn*

indices was necessary and reasonable.

In sum, notwithstanding DOJ's unfounded objections, the Court can easily conclude that the relatively modest amount of time for which CREW seeks compensation is adequately documented and reasonable.[7]

### III.   THE COURT SHOULD APPLY THE UPDATED *LAFFEY* MATRIX TO DETERMINE THE PREVAILING MARKET RATES FOR LEGAL SERVICES

As CREW has shown, CREW Fee Mot. at 17-20, the Court has reiterated in several recent decisions that the appropriate method to determine prevailing market rates for attorneys' fee awards is reflected in an updated *Laffey* matrix derived from the Legal Services Index ("LSI").  *See, e.g.*, *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 156 (D.D.C. 2013) (extensive analysis concluding that "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area"); *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014) ("[t]he Court remains convinced that [the LSI] methodology is appropriate"); *CREW v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182098, *15 (D.D.C. Aug. 4, 2014) ("The Court continues to believe that the LSI Methodology is a more accurate and reliable indicator of prevailing market rates in this area . . . ."); *CREW v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182097, *25 (October 24, 2014) (the "LSI Matrix stands on sound methodological footing" and is appropriate for FOIA case); *CREW v. Dep't of Justice*,

---

[7] Continuing its attempt to rely upon a decision issued more than five years ago under distinguishable circumstances, DOJ asserts that, "[r]epeating its conduct in *CREW v. DHS*, here CREW again has neither filed its contemporaneous time records with the Court nor provided them to opposing counsel upon request."  Def. Fee Opp. at 12.  As we have shown, the Court previously found that CREW has altered its practices since that decision was issued.  *CREW v. FEC*, 2014 U.S. Dist. LEXIS 123727 (D.D.C. Sept. 5, 2014).  More importantly, the documentation submitted here is wholly adequate to allow both the agency and the Court to understand clearly the work for which compensation is sought.

2015 U.S. Dist. LEXIS 16324, *5-6 (D.D.C. Feb. 11, 2015) ("the Court is persuaded by Judge

Howell's analysis of the issue [and adoption of LSI methodology] in *Eley*.").[8]

In its opposition, DOJ does not attempt to refute (or even address) the Court's analysis in

those decisions, but instead seeks to rely primarily upon the declaration of Laura A. Malowane

submitted in another case.  Def. Fee Opp. at 22, n.6; 27-28; DOJ Exhibit B.  CREW notes that

Dr. Malowane's opinions concerning attorneys' fees in the Washington, D.C. market have not

been consistent.  Indeed, in a decision concerning appropriate fees for work performed in 2011,

the Court of Federal Claims found "based on Dr. Malowane's data, that . . . the requested forum

rate of $706 is in the mid-range for 'national' law firms with principal offices in Washington,

D.C. . . ."  *Biery v. United States*, 2012 U.S. Claims LEXIS 1446, 21 (Fed. Cl. Nov. 27, 2012).

*See also* Declaration of Dr. Laura A. Malowane (submitted in *Biery* and filed herewith as Exhibit

B), ¶¶ 19, 21 ("the national rates of plaintiffs' attorneys [$705 - $706 per hour] are in line with

market rates.").  As this Court recognized last year in *CREW v. Dep't of Justice*, 2014 U.S. Dist.

LEXIS 182098, *15, n.4 (D.D.C. Aug. 4, 2014), Dr. Malowane "has given inconsistent opinions

concerning the calculation of attorneys' fees in the District of Columbia market" and testified in

*Biery* that "the national rates of plaintiffs' attorneys ($705-706 per hour) are in line with market

---

[8]  DOJ argues that "[a]s recently as September 2013 . . . CREW itself advocated for attorneys' fees based on the USAO *Laffey* Matrix," and "does not explain what has changed to make the LSI Matrix a better measure of the prevailing market rate now."  Def. Fee Opp. at 22 (citations omitted).  One thing that has changed is that the recent weight of authority has recognized that the LSI methodology results in a more accurate measure of market rates, as exemplified in the Court's lengthy and comprehensive opinion addressing that precise issue in *Eley*, which was issued on November 20, 2013.  In any event, the Court has previously rejected the agency's argument that "CREW has specifically endorsed use of the lower rates of the USAO *Laffey* Matrix in [earlier] FOIA attorneys' fee litigation," concluding that "[t]he fact that [CREW] chooses to now request that its fees be based on the *Laffey* Matrix measured by the Legal Services Index of the CPI, has nothing to do with whether its former requests in other cases were justified or not."  *CREW v. DOJ*, 2014 U.S. Dist. LEXIS 182098, *13 (D.D.C. Aug. 4, 2014).

rates." The Court noted that "[t]hose hourly rates are also compatible with the rates produced by use of the LSI Methodology." *Id.* (citations omitted). *See also CREW v. Dep't of Justice*, 2015 U.S. Dist. LEXIS 16324, *8 (D.D.C. Feb. 11, 2015) ("Dr. Malowane . . . in another fee-shifting case . . . conclude[d] that an hourly billing rate of approximately $700 for a partner at a large Washington, D.C. firm was 'well within' prevailing rates . . ."). As such, DOJ's proffered declaration undermines, not supports, its argument that the Court should depart from its recent strong endorsements of the LSI methodology and the rates reflected in the LSI-adjusted *Laffey* matrix. *Cf. Flores-Hernandez v. United States*, 910 F. Supp. 2d 64, 76, 79 (D.D.C. 2012) (expert's "inconsistent testimony impacts the credibility of his . . . opinions;" "[g]iven his contradictory testimony . . ., the Court does not find [expert's] opinions . . . to be credible").

Beyond its reliance upon the proffered Malowane declaration, DOJ asserts that the "weight of authority" supports use of the USAO matrix rather than the LSI-adjusted matrix, and cites a number of such decisions. Def. Fee Opp. at 23-24. Of those cases, only in *Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011), did the Court consider evidence similar to that before it in this case; the Court considered the expert opinions of both Dr. Malowane and Dr. Michael Kavanaugh.[9] Significantly, the Court in *Heller* relied upon two declarations submitted by Dr. Malowane: one dated August 11, 2009, and the other July 9, 2010. *Id.* at 43. As CREW has shown, subsequent to the submission of those declarations, Dr. Malowane provided testimony in *Biery*, by declaration dated December 20, 2011, in which she supported market rates in line with those calculated by Dr. Kavanaugh. In light of that fact, CREW submits that any reliance upon the Court's earlier analysis of the issue in *Heller* is misplaced. Similarly, in *Queen Anne's Conservation Ass'n v. U.S. Dept. of State*, 800 F. Supp. 2d 195, 200-201

---

[9] CREW here relies upon a declaration of Dr. Kavanaugh (filed with CREW Fee Mot.), and seeks compensation at the hourly rates he calculated using the LSI methodology.

(D.D.C. 2011), the magistrate judge also relied upon the earlier testimony of Dr. Malowane and noted that, unlike here, that evidence was "largely unrebutted" (indeed, Dr. Malowane subsequently rebutted her *own* prior testimony).

In several of the cases DOJ cites, there apparently was no evidence before the Court with respect to the analytic validity of the competing matrices. *See McAllister v. District of Columbia*, 21 F. Supp. 2d 94 (D.D.C. 2014); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71 (D.D.C. 2013); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134 (D.D.C. 2011); and *FOP, D.C. Lodge 1 v. Barry*, 2009 U.S. Dist. LEXIS 18693 (D.D.C. Feb. 23, 2009). In the other cases, the Court found that a lack of "complexity" in the underlying litigation rendered use of the LSI-adjusted matrix inappropriate. *See Salmeron v. District of Columbia*, 2015 U.S. Dist. LEXIS 2399, *20 (D.D.C. Jan. 9, 2015); *Embassy of the Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 95 (D.D.C. 2012); and *DL v. Dist. of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009). Here, in contrast, the agency concedes that the market the Court should look to is the legal market for "complex federal litigation." Def. Fee Opp. at 24. As such, the cited authority bears no relevance to the issue here.[10]

---

[10] As this Court has explained, the *Laffey* matrix establishes "an hourly rates scheme for *complex*, federal litigation under which an attorney's years of experience determine[] his reasonable hourly rate." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14 (D.D.C. 2008) (emphasis added; citation omitted). The Court in *Miller* further noted that "this scheme . . . has achieved broad acceptance in this Circuit and has served as a guide in nearly every conceivable type of case [including those under FOIA]," and that "[t]he generic matrix's use in such a diverse range of cases cuts against [any] argument that reasonable rates can be derived only from data peculiar to a case's legal specialty area." *Id.* (citations omitted). Given DOJ's concession that it is appropriate to use *Laffey* rates to compensate CREW for its legal work, the only issue before the Court is whether to use the updated, LSI-calculated methodology recently and emphatically endorsed by the Court, or whether the USAO matrix is a more reliable indicator of prevailing market rates for complex litigation.

Even if the proffered opinion of Dr. Malowane were consistent with respect to market

rates in the Washington area (which, as the Court previously found, it is not), it would not be

sufficient to overcome the evidence CREW relies upon.  As we explained in our opening brief,

the LSI-adjusted rates, as calculated by Dr. Kavanaugh,

> are consistent with the findings of a survey conducted by the National Law
> Journal in 2012, which reported on rates for partners in four large Washington,
> DC law firms, with "high" reported rates ranging from $1,250 to $985 per hour,
> and "median" rates ranging from $750 to $560 per hour.

CREW Fee Mot. at 20 (footnote omitted), citing *National Law Journal*, "A Nationwide

Sampling of Law Firm Billing Rates" (filed with CREW Fee Mot. as Exhibit D).  Neither DOJ

nor Dr. Malowane disputes those survey results.  Rather, Dr. Malowane's declaration appears to

rely upon unpublished "survey data collected by ALM Legal Intelligence, in its annual Survey of

Law Firm Economics." DOJ Malowane Decl. (DOJ Exhibit B) ¶ 28.[11]  Dr. Malowane describes

the survey data as "billing rates of attorneys in the Washington, DC area, from law offices of *all*

*sizes and types.*"  *Id.* ¶ 32 (emphasis added); *see also* Def. Fee Mot. at 28.  *Laffey* matrices,

however, are not derived from billing rates from law offices of *all* types; the relevant inquiry is

not the price of *all* litigation, but rather the price for *complex federal* litigation.  *Miller*, 575 F.

Supp. 2d at 14; *see also Eley*, 999 F. Supp. 2d at 157 (*Laffey* matrix "was compiled as a general

survey of prevailing rates in this community for highly skilled federal litigators in . . . complex

federal litigation.").[12]

---

[11]  Dr. Malowane states that "[t]hese data are available for purchase through the firm ALM Legal Intelligence," *id.* n.21, but neither she nor DOJ has made them available to CREW or the Court.

[12]  Arguing that LSI-derived hourly rates would "vitiate[] the purpose of fee-shifting," Def. Fee Opp. at 26, DOJ cites, *inter alia, Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). That decision dealt with "enhancements" to the "lodestar" used to calculate an appropriate fee, an issue not raised in this case, where CREW simply seeks the tradition lodestar amount of attorneys' fees, without enhancement.  In any event, it is noteworthy that the Supreme Court in

Finally, DOJ cites *CREW v. Dep't of Justice*, 2015 U.S. Dist. LEXIS 16324 (D.D.C. Feb. 11, 2015), and concludes that "[i]f this Court accepts the LSI Matrix instead of the USAO *Laffey* Matrix, then the Court should, as Judge Cooper did, reduce the rates by fifteen percent to reflect the economic reality of realized fees rather than 'sticker prices.'"  Def. Fee Opp. at 29-30.  DOJ fails to note that Judge Cooper's primary finding concerning "economic reality" was as follows:

> As Judge Howell observed [in *Eley*], the CPI-[Washington-Baltimore] measures inflation of "such diverse items as personal computer prices, funeral expenses and movie tickets" and therefore "heavily masks the changes in rates for legal services."  Moreover, the legal services component of the CPI itself "shows that the cost of legal services nationally has far outstripped the increase in overall prices."  Considering that Washington, D.C. is the third most expensive legal market in the country, the Court agrees with Judge Howell that the LSI-adjusted *Laffey* matrix—even if it does not capture the precise types of litigation services involved in this case—likely offers a better approximation of D.C. rates for the relevant services than a matrix adjusted using a general inflation index.

*Id*. at *6 (citations omitted).  Indeed, as Judge Howell found in *Eley*,

> considering that Washington, D.C. is among the most expensive legal services markets in the country, it would appear that the use of a nationwide legal services index is, if anything, likely to underestimate the costs of local legal services because such a rate is an average of all costs nationwide.  In short, the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide.

999 F. Supp. 2d at 154 (emphasis in original; citation omitted).  As such, in keeping with its recent precedent, the Court should award CREW attorneys' fees based upon the LSI-derived fee matrix.[13]

---

*Perdue* approvingly cited this Court's decision in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), where the LSI methodology was applied to determine the prevailing market rate for attorneys' fees.  559 U.S. at 555 n.6.

[13]  In light of the Court's conclusion in *Eley*, following its detailed and comprehensive analysis of the relevant data, that "the LSI-adjusted matrix is probably a *conservative* estimate" of applicable market rates, CREW respectfully disagrees with Judge Cooper's conclusion that a 15% reduction of the LSI-derived rates was appropriate.

## Conclusion

As the Court has recognized, FOIA's "legislative history evinces a strong desire for courts to be aggressive in awarding attorney's fees to prevailing parties." *Judicial Watch, Inc. v. Bureau of Land Mgt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008).  In keeping with that intent, the Court should find that CREW is entitled to a fee award and that it has demonstrated that the relatively modest number of hours for which it seeks compensation is reasonable.  The Court should also should reject DOJ's invitation to depart from its strong recent precedent applying the LSI-adjusted matrix to calculate attorneys' fee awards in FOIA cases.  For the foregoing reasons, and those presented in CREW's opening brief, the Court should grant this motion and order defendant DOJ to pay CREW attorneys' fees in the amount of $63,827.40[14] and costs in the amount of $550, for a total of $64,377.40.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ADAM J. RAPPAPORT, D.C. Bar No. 479866
Citizens for Responsibility and
   Ethics in Washington
455 Massachusetts Avenue, N.W., Floor 6
Washington, DC 20001
(202) 408-5565

Counsel for Plaintiff

---

[14]  In addition to the fees of $52,544.70 accounted for in CREW's opening brief (and modified herein at n.6, *supra*), CREW seeks additional fees incurred in the preparation of this reply: $11,282.70 for Mr. Sobel's time (14.3 hours @ $789).  *See* Declaration of David L. Sobel, filed herewith as Exhibit C.